UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JONATHAN BERTUCCELLI, and          CIVIL CASE NO. 2:19-CV-1304
STUDIO 3, INC

VERSUS                             JUDGE:_____

UNIVERSAL CITY STUDIOS LLC;        MAGISTRATE:_____
UNIVERSAL CITY STUDIOS
      PRODUCTIONS LLLP;            JURY TRIAL REQUESTED
BLUMHOUSE PRODUCTIONS, LLC;
TREE FALLS IN THE WOODS, L.L.C.; and
JOHN AND JANE DOES 1 – 50,

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

NOW INTO COURT, through undersigned counsel, comes the Plaintiffs, Jonathan Bertuccelli and Studio 3, Inc. (collectively "Bertuccelli"), and for their complaint against Defendants, Universal City Studios LLC, Universal City Studios Productions LLLP, Blumhouse Productions, LLC, Tree Falls in the Woods, L.L.C. (at times collectively referred to as "Universal") and John and Jane Does 1-50, aver as follows:

## NATURE OF THE ACTION

1. This is a civil action for injunctive relief, statutory and other damages, costs and attorneys' fees arising from violations premised on the Copyright Act, 17 U.S.C. § 101 *et seq.* Jonathan Bertuccelli originally created the eye-popping expressionist art known as "*King Cake Baby" ("KCB").* Since *KCB's* creation in 2009, it has entertained, scared and fascinated sports fans, under its permitted use as a walking head mascot for the New Orleans Pelicans. *KCB's* iconic blend of sinister, happy and awkward childish delirium has captured audiences around the United States and drove commentary across the media spectrum.

1

2.   In the midst of *KCB's* national popularity, *KCB* and all of *KCB's* unique artistic elements were unlawfully used as the central masked villainous killer in the feature film *Happy Death Day*, and continues in the upcoming sequel, *Happy Death Day 2U* (at times collectively referred to as "HDD").  The "HDD" masked character and *KCB* are virtually identical in a side-by-side comparison; and in both "HDD" films the character is used to portray a range of emotional and mental cues that derive from *KCB*s intended design.

3.   Unfortunately, the owners, producers, and creators of *Happy Death Day* and *Happy Death Day 2U* did not seek the permission of Bertuccelli for copying *KCB*. They did not give Bertuccelli credit; or compensate Bertuccelli for his work even though they have continued to enjoy significant financial gain from *KCB's* use.

4.   Bertuccelli is the original creator of *KCB* (U.S. Copyright Reg. No. VAu 1-292-638) and its unique *"creepy yet fun'"* image.  (See "Exhibit 1.")  This action seeks to protect his intellectual property rights and secure his fair share of the financial benefit that *KCB* is generating for others.

## PARTIES

5.   Jonathan Bertuccelli is a resident of the State of Louisiana, and the majority owner and President of Studio 3, Inc., a Louisiana corporation.

6.   Studio 3, Inc. is a Louisiana corporation that maintains its principal place of business at 1416 Brooklyn Avenue, New Orleans, Louisiana 70114.

7.   On information and belief, Universal City Studios LLC is a Delaware limited liability company that maintains its principal offices at 100 Universal City Plaza in Universal City, California 91608.  On information and belief, it has designated Enterprise Corporate Services LLC, 1201 N. Market Street, Suite 1000, Wilmington, Delaware 19801, as its agent for service of process.

8.   On information and belief, Defendant Universal City Studios Productions LLLP is a Delaware limited liability limited partnership that maintains its principal offices at 100 Universal City Plaza in Universal City, California 91608. On information and belief, it has designated Enterprise Corporate Services LLC, 1201 N. Market Street, Suite 1000, Wilmington, Delaware 19801, and The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, as its agent for service of process.

9.   On information and belief, Defendant Blumhouse Productions, LLC is a Delaware limited liability company that maintains its principal offices at 2401 Beverly Boulevard in Los Angeles, California 90057.  On information and belief, it has designated Paracorp Incorporated, 2140 S. Dupont Hwy., Camden, Delaware 19934, as its agent for service of process.

10. On information and belief, Defendant Tree Falls in the Woods, L.L.C. is a Louisiana limited liability company that maintains its principal offices at 2401 Beverly Boulevard in Los Angeles, California 90057. On information and belief, it has designated Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802, as its agent for service of process.

11. John and Jane Does 1-50 are currently unknown domestic or foreign individuals and/or entities that have a financial interest in the *Happy Death Day* and/or *Happy Death Day 2U* films; who have or will receive disbursements of proceeds from the money generated by those films, associate merchandise, license and any other income generated from any other source related to these films; and/or are responsible for the accounting and distribution of revenue to holders of both "equity" and "artistic" ownership percentages. Additionally, other unknown John and Jane Doe defendants are believed to include buyers of foreign or domestic rights of distribution, and who may have acquired an equity interest in the proceeds derived from these films within certain markets.

## JURISDICTION AND VENUE

12. Jurisdiction of these claims before this Honorable Court is based upon a federal question, specifically the Copyright Act, 17 U.S.C. § 101 *et seq.*

13. Both subject films were made on location in New Orleans, Louisiana and both films have or will be shown in New Orleans, Louisiana.  Accordingly, the venue of these claims is proper in accordance with 28 U.S.C. §1391.

## FACTS

### Background of Bertuccelli

14. For over 35 years, Bertuccelli's work in creating expressive display art sculptures and parade floats has been enjoyed by audiences across the United States and in numerous countries around the world.  He routinely employs a medieval, Franco-Italian style which is instantly recognizable for its ability to convey immediate visual sensations.  Bertuccelli's creations range from grandiose; such as the *Butterfly King* float displayed during the New Orleans Mardi Gras parade season; quaint, such as "Tom, The Turkey," the beloved centerpiece of the Houston Texas Thanksgiving parade; to whimsical, like the "walking heads" that have entertained countless admirers over the years. Bertuccelli's work has included commissions by major film studios, casinos, municipalities, and sports leagues.





**The Creation and Celebrity of *King Cake Baby***

15. In 2009, Bertuccelli agreed to make three "walking head mascots" for the New Orleans Hornets basketball team (now the New Orleans Pelicans) based on New Orleans Mardi Gras themes; and in the process he began drawing a concept based on the tradition of placing a small plastic baby figure into carnival season pastries known as "king cakes." It was then that *King Cake Baby ("KCB")* was conceived. Bertuccelli's first sketches show:



16. From here, Bertuccelli began refining the facial characteristics to take his concept and make it a piece of dramatic expressive art. The work involved the long process of creating a soft clay sculpture that would be used for final molding. Then, a variety of tools were used to shape and refine *KCB*'s unique dramatic features.



17. In the process of creating proportionality, Bertuccelli designed in special elements to *KCB*'s physical characteristics to project both conflicting emotion in *KCB*'s appearance and to induce conflicting reaction to *KCB*. Upon finishing the clay sculpture, the final hard fiberglass mold for the fabrication of the *KCB* copy to be licensed to the New Orleans Hornets was created.

6



18. Continuing the process, Bertuccelli took an impression from the hard mold and began to flush out his creation by creating unique tone, color and texture elements, all of which brought to life the iconic "creepy fun" animation that would define the rapid success of *KCB*.



19. In the Spring of 2010, *KCB* was introduced as a mascot for the Hornets, and immediately connected with audiences exactly as it was intended by the artist; evoking enjoyment, fear, curiosity, love and even hatred. *KCB* has continuously made public appearances at NBA events, throughout the city of New Orleans, and national television

networks including TNT, ESPN, NBC, NBA Network, and USA Today. *KCB* has appeared on *Jimmy Kimmel Live*, *Inside the NBA,* and the coverage of the 2017 NBA All-Star Game. *KCB* has been the subject of numerous articles and news segments published on the internet, in newspapers, and on television. To be certain, prior to the making of the *Happy Death Day* films, *KCB* was a well known, nationally published image.

20. Demonstrating the market value and penetration of its unique appearance, *KCB* has earned a devoted fan base. While hundreds of examples can be cited, two can demonstrate the range of the following:

a.  In 2014, the artist known as "Flea" (a/k/a Michael Peter Balzary), the world renowned bassist and member of the rock band Red Hot Chili Peppers, tweeted,

> dear new orleans, the king cake baby is the greatest thing to ever happen to the nba.
> — Flea (@flea333) February 25, 2014

See "Exhibit 2."

b. On February 10, 2015, the article "*The Pelicans' King Cake Baby: Huge, Creepy and Born of Storied Carnival Traditions*" was published by www.wwno.org. (See "Exhibit 2.")  In that article, author Jason Saul interviewed Bertuccelli regarding the celebrity of *KCB* and the inspiration, creation, and genesis of *KCB*. The "creepy fun" created by KCB's appearance was described:

> But over the past couple of years the Pelicans may be better known for their new mascots (and their remembered ones) than for the ballgame being played between the TV timeouts.
> Enter King Cake Baby. A Carnival tradition at Hornets, and now Pelicans, games, KCB emerges from his lair to perform scooter races with the Jester and the King. The

*crowd loves it. Sportswriters have been known to place bets on the races.* **_Twitter_**
**_explodes with hilarity and revulsion every time he makes an appearance._**

*Horrifying in aspect and cumbersome in motion,* **_King Cake Baby has become more_**
**_than a Carnival tradition at basketball games. He's a de facto mini-celebrity,_**
*popping up at smoothie shops and television stations, another* <u>smart Pelicans</u>
<u>marketing effort</u>.

See <u>"Exhibit 2"</u> (Emphasis added).

### Creation and Production of *Happy Death Day* and *Happy Death Day 2U*

21. On or about September 19, 2016 (six years after *KCB* had reached celebrity status for its creepy, wacky, whimsical appearance and notoriety) the Defendants began to create the film *Happy Death Day*. (*See* <u>"Exhibit 3"</u>.) *Happy Death Day* is a horror movie set in Louisiana and billed as a "*rewinding thriller"* which features a college student who relives the day of her murder by always encountering the same masked killer.  The masked killer, the feature element of the film, is a virtually identical copy of *KCB*.

22. Based on information and belief, *Happy Death Day* began filming on location in New Orleans, Louisiana, using the campus of Loyola University on or about November 7, 2016.

23. Based on information and belief, the upcoming sequel *Happy Death Day 2U*, was filmed primarily on location in New Orleans, Louisiana and again used the campus of Loyola University.

24. The killer character in both *Happy Death Day* and *Happy Death Day 2U* wears a mask that is identical to the look and visual aspects of *KCB*.  A side by side comparison reveals:



25.   On or about October 7, 2017, while doing promotion for *Happy Death Day*, Director Christopher Landon commented on the take away impression of "Death Day Baby" mask, demonstrating that it was conveying the same reaction as *KCB*.  Specifically, Mr. Landon claims,

> **Q: *What was the process of coming up with that mask, the Happy Death Day Killer mask, how did you come up with that?***
>
> *CL:  So I was looking for something that was organic that would fit as a <u>mascot</u> on a college campus…but I also wanted it to be … it had to function … it had to be <u>scary</u>, a little <u>off</u>, a little <u>weird</u>, a little <u>funny</u>…in its own way…*

October. 7, 2017, Interview

www.collider.com/happy-death-day-jason-blum-christopher-b-landon-interview/

26. The same "scary," "creepy," "weird," and "funny" visual attributes created by *KCB* were copied to create the *Happy Death Day* mask.  On information and belief, the fabrication of the masks and other baby images used throughout *Happy Death Day* and *Happy Death Day 2U, were* done by the Defendants with full knowledge of, and access to, *KCB*.  On information and belief, Defendants were informed that Bertuccelli retained the copyright for *KCB*, yet the Defendants ignored Bertuccelli's rights and copied *KCB* for their own purposes, attempting to make slight variations solely for the purpose of concealing the work's true origin.

27. On or about October 13, 2017, *Happy Death Day* was widely release in movie theaters across the United States.  Based on information and belief, *Happy Death Day* was a blockbuster film generating at least $125 Million in gross ticket sales.

28. On or about February 13, 2019, *Happy Death Day 2U is* slated for wide release in theaters across the United States.  *Happy Death Day 2U* continues to use the Happy Death Day mask as used in the first film.

**Side-By-Side Comparison Shows that *KCB* was copied for Happy Death Day.**

29. A side-by-side comparison of *KCB* and Happy Death Day mask clearly shows that the visual attributes and aspects which have made *KCB* a celebrity mascot were copied and so substantially similar that the two are seen to be the same.

# COMPARISON: SIDE BY SIDE
HEAD SHAPE

KING CAKE BABY

DEATH DAY BABY WEARING HOODIE



# COMPARISON: SIDE BY SIDE
VISIBLE FACE

KING CAKE BABY

DEATH DAY BABY WEARING HOODIE



# COMPARISON: SIDE BY SIDE
VISIBLE FACE WITH HOODIE

KING CAKE BABY WEARING HOODIE                DEATH DAY BABY WEARING HOODIE

 

# COMPARISON: SIDE BY SIDE
PROFILE/EARS

**KING CAKE BABY**
(Source: King Cake Baby Twitter Page)

**DEATH DAY BABY MASCOT MASK**
(Source: Happy Death Day Movie )



# COMPARISON: SIDE BY SIDE
EYE SHAPE/DISTANCE APART/COLOR

KING CAKE BABY        DEATH DAY BABY WEARING HOODIE



# COMPARISON: SIDE BY SIDE
MOUTH SHAPE/COLOR/TOOTH POSITION IN TOP OF MOUTH

KING CAKE BABY        DEATH DAY BABY WEARING HOODIE

 

# COMPARISON: SIDE BY SIDE
NOSE SHAPE/POSITION ON FACE

KING CAKE BABY                    DEATH DAY BABY WEARING HOODIE



# COMPARISON: SIDE BY SIDE
CHEEK POSITION/SHADING

KING CAKE BABY                    DEATH DAY BABY WEARING HOODIE





30. Further, side-by-side comparison of a summary of design aspects demonstrates that *KCB* was copied by *Happy Death Day.*

| KCB | HAPPY DEATH DAY Mask |
|---|---|
| Walking Head / Mascot | Mascot for fictitious Bayfield University |
| Blue Eyes | Blue Eyes |
| High arced orbits above pupil | High arced orbits above pupil |
| Blushed cheeks | Blushed cheeks |
| Open mouth showing teeth | Open mouth showing tooth |
| Large baby type cheeks paired with an adult type double chin | Large baby type cheeks paired with an adult type double chin |
| Creepy, Funny | Scary, Funny |

**The "ordinary observer" sees *KCB* and the Happy Death Day mask as the same.**

31. Immediately upon the start of promotion for *Happy Death Day* in 2017, members of the public recognized that the Happy Death Day mask was a copy of *KCB:* (See Cumulative "Exhibit 4.")

    a. June 15, 2017 – Twitter



    b. June 18, 2017 – Twitter



   c.  <u>September 13, 2017 – Tigerdroppings Blog</u>

      *CONGRATS TO KING CAKE BABY FOR HIS FIRST ROLE IN A MOVIE!*

        (<u>www.tigerdroppings.com/rant/new-orleans-pelicans/congrats-to-king-cake-baby-for-his-first-role-in-a-movie/72142852</u>.)  See <u>"Exhibit 5."</u>

   d.  <u>September 19, 2017 – Twitter</u>



   e.  <u>September 29, 2017 – Twitter</u>



18

f.   October 12, 2017, 9:05 am – Twitter



g.   October 12, 2017, 10:52 AM – Twitter



h.  October 12, 2017, 11:47 AM – Twitter



i.  October 12, 2017, 12:44 PM -- Twitter



j.  October 12, 2017, 2:11 PM – Twitter



k.  October 12, 2017, 3:57 PM – Twitter



l.  <u>October 19, 2017 – Twitter</u>



m.  <u>October 2017 – Reddit</u>

*THE KILLER FROM HAPPY DEATH DAY LOOKS AWFUL FAMILIAR*

www.reddit.com/NewOrleans/comments/75u311/the_killer_from_happy_d
eath_day_looks_awful/

(See "<u>Exhibit 6</u>.")

n. October 15, 2018 – Twitter



32. The officially managed *KCB* Twitter account had to publicly deny that *KCB* was actually cast or licensed as the Happy Death Day mask. In response to the Twitter messages above, KCB's account stated:



*See* "Cum. Exhibit 4."

33. On October 27, 2018, Sports website, Belly Up Sports compared KCB to the Happy Death Day mask and found *KCB* to be one of "*5 Terrifying Mascots Compared to Horror Movies: Halloween Special.*" (See "Exhibit 7.")

34. With the approach of the release of *Happy Death Day 2U*, the public observer continues to recognize that *KCB* and the *Happy Death Day* mask are identical (See "Cum. Exhibit 8"):

    a.  January 21, 2019 –Twitter



    b.  January 22, 2019 – Twitter



c.   February 3, 2019 – Twitter



d.   February 4, 2019 – Twitter



e.   <u>February 10, 2019 – Twitter</u>



35. Based on readily available information, the ordinary observer overlooks any differences between *KCB* and *Happy Death Day* mask, providing prima facie evidence that Defendants copied *KCB* for their own use without authorization or license to do so.

36. *Happy Death Day* makes pervasive use of the copies of *KCB's* imagery.  Specifically, the image of *KCB* can be seen at the following approximate times from the beginning of the *Happy Death Day* film:

01:33 to 01:45 – Banner

07:13 –Mascot merchandise. Mask, cutout, sweatshirts, cups, water bottles

01:16 –Banner

11:28 –Masks

11:34 –Killer appearance

12:50—Killer appearance

13:15 –Killer appearance

14:08 –Killer appearance

14:11 –Killer appearance

14:37 –Banner

15:31 –Banner

15:35 –Sticker

19:32 –Masks other merchandise

23:08 –Masks

23:17 –Killer appearance

24:51 –Killer appearance

26:30 –Banner

26:36 –Banner

27:10 –Banner

27:27 –Killer appearance

27:32 –Killer appearance

27:36 –Killer appearance

27:42 –Killer appearance

27:45 –Killer appearance

28:32 –Killer appearance

28:54 to 29:39 –Killer appearance

29:43 –Banner

29:52 –Banner

34:55 –Birthday card

37:26 to 37:50–Killer appearance

37:46 –Killer appearance

38:09 –Banner

42:36 –Killer appearance

42:12 –Killer appearance

44:39 –Killer appearance

45:14 –Banner

46:24 –Killer appearance

49:55 –Mask

50:50 to 53:06 –Killer appearance

53:06 to 53:08 –Killer appearance

55:45 to 57:28 –Killer appearance

56:13 –Killer appearance

56:26 –Killer appearance

57:43 –Banner

58:36 –Banner

58:56 –Banner

58:58 to 59:03 –Sticker

1:04:50 to 1:05:26 –Killer appearance

1:07:56 –Banner

1:08:22 –Banner

1:21:56 –Banner

1:23:41 –Mask

1:23:44 –Mask

1:23:50–Mask

1:29:30 –Banner

1:30:19 –Sticker

1:30:33 –Credits

1:30:36 –Credits

1:30:42 –Credits

1:30:59. –Credits

1:31:08 —Credits

1:31:19 —Credits

1:31:26 —Credits

1:31:29 —Credits

37. Bertuccelli is the owner of all rights, title and interest in and to *KCB* sculptural work and has maintained ownership in those rights since creating the sculpture.

38. The *KCB* work is currently protected under the laws of copyright and registered with the United States Copyright Office as "King Cake Baby," Registration No.VAu 1-292-638. See "Exhibit 1."  It is not part of the public domain. Bertuccelli has not dedicated it to the public. Bertuccelli has never assigned, licensed or otherwise transferred the copyright in *KCB* to the Defendants.

39. Prior to its pervasive use in *Happy Death Day* and *Happy Death Day 2U,* none of the Universal Defendants or their agents sought or obtained permission from Bertuccelli to copy, reproduce, create derivative works from, or distribute the plaintiffs' copyrighted works.

40. Defendants' use of the *KCB* copyright does not constitute any of the generally accepted forms of use under the Fair Use Doctrine.

41. Defendants continue to infringe the *KCB* copyright via the various mediums of exhibition and distribution of *Happy Death Day*, as well as the upcoming of a sequel, *Happy Death Day 2U.*

42. Defendants' conduct has caused, and continues to cause, irreparable harm to Bertuccelli.

43. On information and belief, from June 26, 2017, Universal was the copyright claimant and employer for hire author for the *Happy Death Day - Teaser One-Sheet*, the "movie poster," which is believed to contain infringing content.  See "Exhibit 9."  Universal appears to have assigned that interest or some other interest relating to *Happy Death Day* to Universal Productions on August 18, 2017.  See "Exhibit 10."

44. On information and belief, Universal Productions is the copyright claimant for the *Happy Death Day* motion picture, preregistered on September 9, 2017 and registered on October 17, 2017.  Proof of this is annexed hereto as "Exhibit 3."

45. On information and belief, Blumhouse operates as an independent film production company and acted as the production company for *Happy Death Day* and *Happy Death Day 2U*, the films which infringe Bertuccelli's copyrights.

46. On information and belief, Tree Falls in the Woods LLC is a subsidiary and/or "loan out company" as that term is used in the film and entertainment industry. It is registered with the United State Copyright Office as the author of the *Happy Death Day* motion picture. See "Exhibit 11."

## CAUSES OF ACTION

### COUNT 1:

### COPYRIGHT INFRINGEMENT BY UNIVERSAL CITY STUDIOS, LLC

47. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 to 46.

48. The *KCB* is an original work of authorship and copyrightable as a sculptural work under the laws of the United States and has been published in conformity with the Copyright Act and all laws government copyright.

49. Plaintiffs never assigned, licensed or otherwise transferred the copyrights in the *KCB* to Universal.

50. By the actions alleged above, Universal has willfully infringed, directly and/or vicariously, and will continue to willfully infringe the *KCB*, without permission, in disregard for and with indifference to Plaintiffs' rights, by creating *Happy Death Day*, its derivate properties, and currently producing its sequel, *Happy Death Day 2U*, as well as all merchandise and other goods and services for sale based on the *Happy Death Day* property and franchise.

51. Plaintiffs are entitled to an injunction restraining the continuous Copyright Act violations of Universal, its agents and employees, and all persons acting in concert or participation with them.

52. As a direct and proximate result of Universal's actions alleged above, Plaintiffs have been injured and are entitled to the actual damages they suffered and to profits derived by Universal as a result of its infringing conduct pursuant to 17 U.S.C. § 504(b).

53. Alternatively, as a direct and proximate result of Universal's actions alleged above, Plaintiffs have been injured and are entitled to the maximum statutory damages from Universal pursuant to 17 U.S.C. § 504(c).

54. Plaintiffs are further entitled to their costs in pursuing this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT 2:

## COPYRIGHT INFRINGEMENT BY UNIVERSAL CITY STUDIOS PRODUCTIONS, LLLP

55. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 to 54.

56. The *KCB* is an original work of authorship and copyrightable as a sculptural work under the laws of the United States and has been published in conformity with the Copyright

Act and all laws government copyright.

57. Plaintiffs never assigned, licensed or otherwise transferred the copyrights in the *KCB* to Universal Productions.

58. By the actions alleged above, Universal Productions has willfully infringed, directly and/or vicariously, and will continue to willfully infringe the *KCB*, without permission, in disregard for and with indifference to Plaintiffs' rights, by creating *Happy Death Day*, its derivate properties, and currently producing its sequel, *Happy Death Day 2U*, as well as all merchandise and other goods and services for sale based on the *Happy Death Day* property and franchise.

59. Plaintiffs are entitled to an injunction restraining the continuous Copyright Act violations of Universal Productions, its agents and employees, and all persons acting in concert or participation with them.

60. As a direct and proximate result of Universal Productions' actions alleged above, Plaintiffs have been injured and are entitled to the actual damages they suffered and to profits derived by Universal Productions as a result of its infringing conduct pursuant to 17 U.S.C. § 504(b).

61. Alternatively, as a direct and proximate result of Universal Productions' actions alleged above, Plaintiffs have been injured and are entitled to the maximum statutory damages from Universal Productions pursuant to 17 U.S.C. § 504(c).

62. Plaintiffs are further entitled to their costs in pursuing this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT 3:

## COPYRIGHT INFRINGEMENT BY BLUMHOUSE PRODUCTIONS, LLC

63. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 to 62.

64. The *KCB* is an original work of authorship and copyrightable as a sculptural work under the laws of the United States and has been published in conformity with the Copyright Act and all laws government copyright.

65. Plaintiffs never assigned, licensed or otherwise transferred the copyrights in the *KCB* to Blumhouse.

66. By the actions alleged above, Blumhouse has willfully infringed, directly and/or vicariously, and will continue to willfully infringe the *KCB*, without permission, in disregard for and with indifference to Plaintiffs' rights, by creating *Happy Death Day*, its derivate properties, and currently producing its sequel, *Happy Death Day 2U*, as well as all merchandise and other goods and services for sale based on the *Happy Death Day* property and franchise.

67. Plaintiffs are entitled to an injunction restraining the continuous Copyright Act violations of Blumhouse, its agents and employees, and all persons acting in concert or participation with them.

68. As a direct and proximate result of Blumhouse's actions alleged above, Plaintiffs have been injured and are entitled to the actual damages they suffered and to profits derived by Blumhouse as a result of its infringing conduct pursuant to 17 U.S.C. § 504(b).

69. Alternatively, as a direct and proximate result of Blumhouse's actions alleged above, Plaintiffs have been injured and are entitled to the maximum statutory damages from Blumhouse pursuant to 17 U.S.C. § 504(c).

70. Plaintiffs are further entitled to their costs in pursuing this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT 4:

## COPYRIGHT INFRINGEMENT BY TREE FALLS IN THE WOODS, LLC

71. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 to 70.

72. The *KCB* is an original work of authorship and copyrightable as a sculptural work under the laws of the United States and has been published in conformity with the Copyright Act and all laws government copyright.

73. Plaintiffs never assigned, licensed or otherwise transferred the copyrights in the *KCB* to Tree Falls in the Woods LLC.

74. By the actions alleged above, Tree Falls in the Woods LLC has willfully infringed, directly and/or vicariously, and will continue to willfully infringe the *KCB*, without permission, in disregard for and with indifference to Plaintiffs' rights, by creating *Happy Death Day*, its derivate properties, and currently producing its sequel, *Happy Death Day 2U*, as well as all merchandise and other goods and services for sale based on the *Happy Death Day* property and franchise.

75. Plaintiffs are entitled to an injunction restraining the continuous Copyright Act violations of Tree Falls in the Woods LLC, its agents and employees, and all persons acting in concert or participation with them.

76. As a direct and proximate result of Tree Falls in the Woods LLC's actions alleged above, Plaintiffs have been injured and are entitled to the actual damages they suffered and to profits derived by Tree Falls in the Woods LLC as a result of its infringing conduct pursuant to 17 U.S.C. § 504(b).

77. Alternatively, as a direct and proximate result of Tree Falls in the Woods LLC's actions alleged above, Plaintiffs have been injured and are entitled to the maximum statutory damages from Tree Falls in the Woods LLC pursuant to 17 U.S.C. § 504(c).

78. Plaintiffs are further entitled to their costs in pursuing this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT 5:

## INJUNCTION TO SAFEGUARD PROCEEDS

## EXPEDITED HEARING REQUESTED

79. Based on information and belief, *Happy Death Day 2U* is expected to generate significant money when it is released in theaters across the United States on Wednesday, February 13, 2019.

80. Based on information and belief, the production budget for *Happy Death Day 2U* was approximately $9 Million.

81. Plaintiffs' claim that their work has contributed substantially to the success of the *Happy Death Day* and *Happy Death Day 2U* films.

82. Plaintiffs request this Court enter an Order requiring the Defendants to hold and safeguard the proceeds generated by *Happy Death Day 2U* in an interest-bearing account at a federally insured banking institution until the rights of the Plaintiff have been determined in this matter.

83. Plaintiffs do recognize that there are certain qualified expenses that must be reimbursed from the proceeds of the film, regardless of Plaintiffs' right to share in the profits of these films.  Plaintiff would specifically request this Court Order the Defendants to account for and hold all proceeds in an interest-bearing account after the film has generated $20 Million in revenue, which $20 Million is permitted to be used for qualified payments of the production expenses, as well as qualified expenses of publicity, advertising, and distribution of the films.

84. Plaintiff request this Court enter an Order restraining the Defendants from distribution of any and all proceeds in excess of the $20 Million threshold and that Defendants are ordered to account for and justify each and every expense that Defendant claims to be part of the qualified and allowable expense reimbursements.

## DEMAND FOR RELIEF

Plaintiffs pray for Judgment in their favor over and against each of these Defendants for the following relief:

A. For an Order enjoining the Defendants, their officers, agents, employees and those acting in concert with them, temporarily during the pendency of this action and permanently thereafter from

(i)  infringing or contributing to or participating in the infringement by others the copyright in *King Cake Baby* or acting in concert with, aiding and abetting others to infringe said copyright in any way; and

(ii) copying, duplicating, selling, licensing, displaying, distributing, or otherwise using without authorization copies of *King Cake Baby* to which Plaintiffs are owners of exclusive rights under the respective copyrights or derivative works based thereon;

B. That Defendants be required to account for and pay over to Plaintiffs the actual damages suffered by the Plaintiffs as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiffs' copyright or exclusive rights under copyright and to pay such damage to Plaintiffs as a Jury shall determine within the provisions of Copyright Act;

C. That Defendants have spent less than $20 Million USD making both films and have or will recover more than $200 Million USD in gross revenue, that 50% of the

net revenue should be awarded to the Plaintiffs, and that Plaintiffs should receive

a 50% interest in all future distributions.

D. That Defendants be required to account for and pay over into a Court restricted

interest bearing account any and all profits from the film *Happy Death Day* and

*Happy Death Day 2U*; and that such account shall be established to safeguard

profits due the Plaintiffs until such time as the profits attributable to the

infringement of Plaintiffs' copyright or exclusive rights under copyright are

determines by the Jury in this matter.

E. For an award of costs in this action as well as reasonable attorneys' fees pursuant

to 17 U.S.C. § 505;

F. For an award of prejudgment and post-judgment interest according to applicable

law; and

G. For such other such other and further relief as this Court may deem just and

proper.

Dated: February 12, 2019.

By: */s/ John A. Scialdone*

Bill Luckett
   (*pro hac vice* motion forthcoming)
Luckett Law Firm, P.A
Post Office Drawer 1000
143 Yazoo Avenue
Clarksdale, Mississippi 38614
662-624-2591
662-627-5403(fax)
Email: wol@luckettlawfirm.com

John A. Scialdone, Louisiana Bar No. 21859
David N. Harris, Jr.,
   (*pro hac vice motion forthcoming*)
Scialdone Law Firm, PLLC
1319 24th Avenue
Post Office Box 4080 (39502)
Gulfport, MS 30501
Tele: (228) 822-9340
    Fax: (228) 822-9343
Email: jscialdone@slfirmus.com
     dharris@slfirmus.com
400 Poydras Street, Suite 1680
New Orleans, LA 70130
Tele: 504-527-5400