UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHAN BERTUCCELLI, and STUDIO 3, INC., <br><br> VERSUS <br><br> UNIVERSAL CITY STUDIOS LLC, *et al*. | CIVIL ACTION NO. 2:19-CV-1304 <br><br> JUDGE: <br> GREG GERARD GUIDRY <br><br> MAGISTRATE JUDGE: <br> JOSEPH C. WILKINSON, JR. <br><br> SECTION T-2 |

## MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OPINION TESTIMONY BY PLAINTIFFS' PROPOSED EXPERTS, JAMES T. BERGER AND EDWARD R. GRIFFOR

Defendants, Universal City Studios LLC, Universal City Studios Productions LLLP,

Blumhouse Productions, LLC, Tree Falls In The Woods, L.L.C., Anthony "Tony" Robert

Gardner, The Alterian Ghost Factory, Inc., Trick or Treat Studios and Foe Paw Films, LLC

(collectively, "Defendants"), through undersigned counsel, submit this memorandum in support

of their motion to exclude opinion testimony by Plaintiffs' proposed experts, James T. Berger

and Edward R. Griffor.

## INTRODUCTION

This action arises from Plaintiffs' allegation that the mask of a cartoonish baby face

("HDD Mask"), used as a prop in the 2017 feature film *Happy Death Day* and its sequel, *Happy*

*Death Day 2U* ("Films"), infringes their copyright in "King Cake Baby" ("KCB"), an oversized

"walking head" figure Plaintiffs built in 2009 to provide halftime entertainment at New Orleans

Hornets (now Pelicans) NBA games during Carnival Season.  Defendants have moved for

summary judgment on all claims, on the ground that a comparison of the two works' protectable

- 2 -

expression shows that they are not "substantially similar," as required to establish copyright infringement.

Plaintiffs have identified two experts who purport to opine on the issue of "substantial similarity," but both completely misconstrue the applicable copyright standard.  One is David T. Berger, whose experience is in "marketing, intellectual property evaluation, and sample surveying."  He reviews a small number of Twitter posts ("tweets") and other material he found on the Internet, followed by his "opinion" – based on no analysis whatsoever – that these unauthenticated, mostly anonymous online posts are evidence of public "confusion" over the works at issue.[1]  Plaintiffs also offer Edward R. Griffor as an expert in "target recognition, applied mathematics and artificial intelligence."  He opines that a computer algorithm shows "a mathematical probability of public confusion between the mask images in question."[2]  Both reports are fatally flawed because they improperly conflate public "confusion" – which is the standard in trademark cases – with "substantial similarity," the standard in this copyright case. The Fifth Circuit has held squarely that evidence of public "confusion" over two works cannot be offered to show that two works are substantially similar, particularly where the evidence fails to distinguish between expression that may be protected by copyright, and other elements of the works – such as generic concept or use of anatomical features – that are **not** protected by copyright.  Neither Berger nor Griffor make this distinction in their review of the HDD Mask and KCB, and the underlying materials on which each of them rely also fails to make this critical legal distinction.

---

[1] Berger's report, attached as Exhibit 1 ("Berger Report") at pp. 3-9.
[2] Griffor's report, attached as Exhibit 2 ("Griffor Report") at p. 5.

- 2 -

Both reports and opinions are plainly inadmissible for this reason alone, as well as for several other independent reasons. This Court should exclude both experts under the Daubert standard, the Federal Rules of Evidence, and Fifth Circuit copyright law.

First, the premise of both reports – that "substantial similarity" may be shown by alleged "confusion" between KCB and the HDD Mask when the works are compared as a whole – disregards Fifth Circuit law. Alleged confusion based on a "comparison of the two [works] in their entirety" is not a permissible basis for determining substantial similarity where, as here, the copyrighted works at issue include elements that are **not** protected by copyright. See Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc., 783 F.3d 527, 552-53 (5th Cir. 2015). Instead, the substantial similarity test requires examining whether "the allegedly infringing work bears a substantial similarity to the **protectable** aspects of the original work." Id. at 550 (emphasis added, citation omitted). This analysis requires the Court first to "filter out" unprotected elements – such as, in this case, the generic idea of an cartoonish baby as a mascot, or common, unoriginal elements like portraying a baby with blue eyes – and then compare only protectable creative expression. Berger and Griffor both ignore this requirement; they do not filter out the unprotected elements of KCB, and instead simply consider the two works as a whole. This is precisely the sort of "evidence" that Nola Spice unequivocally holds may not be considered in the substantial similarity analysis. Id.

Second, as a matter of law, expert testimony has no place in the second part of the "substantial similarity" analysis, when the remaining protectable expression (if any remains) is compared. In this second step, the Fifth Circuit applies the following test to determine whether a copyright claimant has presented a legally actionable infringement claim: a "*side-by-side comparison* must be made between the original and the copy to determine *whether a layman*

- 3 -

*would view the two works as `substantially similar.'*" Bridgmon v. Array Systems Corp., 325

F.3d 572, 576 (5th Cir. 2003); Creations Unlimited v. McCain, 112 F.3d 814, 816 (5th Cir.

1997).[3]  Because the legal standard is how a **layperson** would view a comparison of the works'

protected expression after unprotected elements are "filtered out," expert testimony would not

"help the trier of fact understand the evidence or … determine a fact in issue," as Federal Rule of

Evidence 702 requires.  Offering "expert" conclusions about how the works at issue are viewed

by "laypersons" is a non sequitur that would not assist the trier of fact.[4]

Third, there is no scientific validity to the reasoning and methodology underlying either

report.  As to Berger, summarizing tweets found in an online search requires no expertise, and

does not utilize any professional skills.  The Court should reject Plaintiffs' transparent attempt to

elevate online snark and other unauthenticated, inadmissible hearsay Internet postings into

"evidence" under the guise of expert testimony.  Griffor likewise provides no reliable basis,

much less one grounded in scientific research or analysis, for finding substantial similarity based

on what a computer might perceive when examining the works' faces as a whole, without

filtering out their unprotected elements.  This Court should exclude both Berger's and Griffor's

proposed testimony as irrelevant, unreliable, and ultimately unhelpful to the trier of fact.

Finally, neither Berger nor Griffor is qualified to present expert opinion testimony on

questions of copyright liability.  Berger's experience is exclusively in **trademark** infringement

---

[3] As the Fifth Circuit made clear in Nola Spice, this "comparison" takes place **after** the
unprotected elements are "filtered out."  Nola Spice, 783 F.3d at 550 (citing Creations Unlimited
and noting "where the copyrighted work contains unprotectable elements, **the first step** is to
distinguish between protectable and unprotectable elements of the copyrighted work") (emphasis
added).

[4] See Berger Report at pp. 13-14; Griffor Report at p. 5.

- 4 -

and marketing.[5]  Griffor's experience is exclusively in artificial intelligence and higher

mathematics.[6]  Neither has any experience, expertise, education, or credentials in copyright, or in

evaluating the types of works at issue here.  Thus, even apart from the other legal bars to this

"evidence," Berger and Griffor fail to reach the threshold issue for permitting expert testimony.

Their lack of knowledge in the field of copyright is laid bare in their reports, where both

**repeatedly** conflate alleged consumer "confusion" – which is the legal standard for trademark

infringement[7] – with "substantial similarity," which is the standard in copyright cases.  The

latter, as noted above, cannot be shown through alleged "confusion" between two works in their

entirety.[8]

### BERGER REPORT

Berger states that he is "a marketing communications and trademark survey expert" and

that Plaintiffs retained him "to show the extent of exposure the alleged copyright infringement

has received from the mass media and social media."[9]  His report fails to explain why media

"exposure" of the alleged infringement is relevant to any issue in the case; it plainly is not.

Berger performs no analysis.  His report explains that his "methodology for determining

if the defendants infringed the plaintiffs' copyright" was nothing more than "observation of

published articles and social media where the infringement is presented."[10]  Berger simply

---

[5] See Berger Report, which includes Berger's *curriculum vitae*.

[6] See Griffor Report, which includes Griffor's *curriculum vitae*.

[7] The "likelihood of confusion" standard is applied to registration and infringement of trademarks.  Streamline Production Systems, Inc. v. Streamline Mfg., Inc., 851 F.3d 440, 450 (5th Cir. 2017).

[8] Berger Report at p. 13; Griffor Report at p. 5.

[9] Berger Report at p. 2.

[10] Berger Report at p. 2.

- 5 -

reviewed 73 tweets over a six-year period dating back to 2014.[11] (For context, approximately one **trillion** tweets were sent over that same time period.)[12]  He also conducted a Google search for "King Cake Baby Lawsuit,"[13] and reviewed Internet posts and mass media coverage.  He did not attempt to conduct a scientifically reliable survey.  Nothing in the report suggests that this alleged "methodology" is supported by any legal or scientific principles recognized in copyright law.

Berger asserts, without foundation, that in his alleged "field," "we can determine lay person's [sic] perception of substantial similarity and/or confusion by either engaging in a known set of protocols for conducting sample surveys and/or analyzing real world evidence of laypersons' perception of substantial similarity and/or confusion."[14]  But the only putative support he offers for his conclusions here is his own subjective reviews of the tweets, Internet postings, and mass media reports (which are primarily about this lawsuit).[15]  His Report offers no context regarding how widespread the sentiment allegedly expressed in the posts might be, or whether contrary opinions also were expressed online.  He does not identify, or disclose any interviews or communications with, any of the individuals who posted the material on which he relies.  He does not even examine the actual **content** of any of the tweets – most of which are

---

[11] Berger Report at Exhibit A pp. 1-36.  Of the 73 tweets, five are from **2015 or earlier** – that is, at least two years before *Happy Death Day*'s October 2017 release.  These tweets comment **only** on KCB, and have nothing to do with the HDD Mask.  Another 12 tweets pre-date the Film's release date, and appear to be based entirely on the Film's trailer.

[12] Twitter users send approximately 500 million tweets each day, or 182.5 billion per year. *See* "Twitter Usage Statistics," https://www.internetlivestats.com/twitter-statistics/ (last visited May 6, 2020).

[13] Berger Report at p. 5 and Exhibit B.  This search also is meaningless; looking for articles after a lawsuit was filed, which report about the plaintiff's allegations, is inherently one-sided, and plainly does not provide any basis for a conclusion about the works.

[14] Berger Report at p. 3.

[15] Berger Report at pp. 3-9 and Exhibits A and B to Berger Report.  See also note 13.

4837-0865-1708v.5 0103245-000015

attempts to appear funny or sarcastic (as is typical on Twitter), and none of which engage in any comparison beyond an overall impression of the two works.[16]  Indeed, some of the tweets expressly refer to unprotectable elements of the works.[17]

Berger does nothing more than review this material before leaping to the conclusion that, in his subjective view, "there is no question in my mind that the facts show conclusively that the *Happy Death Day* character is perceived by lay persons [sic] as substantially similar under the criteria set forth by Fifth Circuit's copyright infringement standard [set] forth above."[18]  But neither Berger's opinion, nor the underlying hearsay publications on which he relies, make any distinction between creative **expression** in a work and the underlying "idea" or "character."  The latter is not protected by copyright.  See Nola Spice, 783 F.3d at 549.  Berger also ignores the obvious contradiction at the heart of his report – that this Court does not need a purported "expert" to assist in evaluating an issue that is intended to be viewed from the perceptions of laypersons.

### GRIFFOR REPORT

Griffor begins by asserting that he "assume[s] that the relevant standard for comparing images is whether an ordinary observer without assistance would see the images as substantially similar in a side-by-side comparison."[19]  Not only is his premise a misstatement of the law,[20]  he disregards it, by immediately offering the "assistance" of artificial intelligence and facial

---

[16] Examples include such insights as "wait is king cake baby in happy death day" from @k0jiiii (Oct. 10, 2017) and "I see @KingCakeBaby has been working during the offseason…" from @misterjingo1 (Oct. 11, 2017).  Berger Report, Exhibit A.

[17] For example, @jayewardell opines that the HDD Mask is KCB "grown up," because "[t]hey're both ugly as hell, and from Louisiana.  I rest my case."  Berger Report, Exhibit A (Jan. 19, 2018).

[18] Berger Report at pp. 13-14.

[19] Griffor Report at p. 3.

[20] See Section 2(A).

recognition algorithms to **predict** the ordinary observer's reaction to KCB and the HDD Mask.[21]

He offers no explanation for why the Court would need the assistance of artificial intelligence to determine the perception of laypersons. He simply asserts, in wholly conclusory fashion, that he is using "an objective methodology … that demonstrates, to a reasonable degree, a mathematical probability of public confusion between the mask images in question. We infer further that such a methodology may be superior, at a minimum with respect to reliability and repeatability, to the traditional approach of using written questionnaire protocols to perform surveys of volunteer respondents."[22]

Griffor's conclusions are flawed in numerous respects. Most egregiously, as noted above, he relies on a false premise concerning the relevant legal standard. He makes no effort to filter out of his analysis **any** unprotected element of KCB, as required by Nola Spice and other Fifth Circuit authority. Instead, the overlapping features he identifies between the two works at issue consist **entirely** of standard anatomical features, such as "centered/wide (staring) aligned eyes," and "prominent/raised forehead boundary region," or cites to common depictions of babies that are not original to KCB, like "blue-turquoise eye color region" and "double chin."[23] These elements "are ideas not entitled to copyright protection." Nola Spice, 783 F.3d at 551; Blehm v. Jacobs, 702 F.3d 1193, 1204 (10th Cir. 2012) ("anatomical features such as arms, legs, faces, and fingers [on cartoon figures] … are not protectable elements."). Additionally, like Berger, Griffor relies on a test applicable to **trademark** infringement –the alleged "probability of

---

[21] Griffor Report at p. 3.

[22] Griffor Report at p. 5.

[23] Griffor Report at p. 9. Griffor fails to acknowledge that virtually **every** mask, walking head, or other inanimate depiction of a face that depicts open eyes must, by definition, have "staring" eyes.

- 8 -

public confusion between the mask images in question"[24] – that has no place in copyright law.

Finally, the substantial similarity test looks to whether a **layperson** would view the two works' protected expression as "substantially similar" after unprotected elements have been "filtered out." Artificial intelligence would not be helpful to the Court, which does not need an "expert" to assist in determining the perceptions of laypersons.

## ARGUMENT

### 1.    Legal standard for the admissibility of expert testimony.

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, expert testimony is permissible where the expert's "specialized knowledge" will assist the trier of fact, and the expert's testimony is based on "sufficient facts or data" and "reliable principles and methods."

As a threshold issue, for a witness to testify as an expert, the witness must be qualified to do so "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Indeed, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 593-95 (1993), and its

---

[24] Griffor Report at p. 5.

4837-0865-1708v.5 0103245-000015

progeny, a "district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009) (quoting Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999)).

When considering the admissibility of expert opinion testimony, the district court must ensure that the expert's reasoning and methodology underlying the testimony are scientifically valid and have been properly applied to the case at bar. See Daubert, 509 U.S. at 589, 593-95. To ensure that any proposed expert testimony is both reliable and relevant under Rule 702, Daubert imposes a "gatekeeping" role on trial judges that, in turn, triggers a two-part analysis. See In re Vioxx Products Liability Litigation, 414 F. Supp. 2d 574, 579 (E.D. La. 2006); Marshall v. Supreme Offshore Services., Inc., No. 10-3198, 2011 WL 6258487 at *1 (E.D. La. Dec. 15, 2011) (Vance, J.). The purpose of the gatekeeper role "is to ensure the reliability and relevancy of expert testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

First, the court must determine if the testimony is relevant – in other words, whether an expert's reasoning or methodology can be applied properly to the facts at issue. See Curtis v. M & S Petroleum, Inc., 174 F.3d 661, 668 (5th Cir. 1999). Such testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 245 (5th Cir. 2002); Kerlec v. E-Z Serve Convenience Stores, Inc., No. CIV-A. 97-2577, 1998 WL 637244 at *1 (E.D. La. Sept. 16, 1998) (Vance, J.) (same). Expert testimony that is based on faulty assumptions does not assist the trier of fact. Daubert, 509 U.S. at 592-593.

Second, the court must determine whether the proffered testimony is reliable – that is, whether the "reasoning or methodology underlying the testimony is scientifically valid." Curtis, 174 F.3d at 668. This reliability element requires that the testimony be grounded "in the

- 10 -

methods and procedures of science and …. be more than unsupported speculation or subjective belief." Id. (citing Daubert, 509 U.S. at 590). The "reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." Knight v. Kirby Inland Marine, Inc., 482 F.3d 347, 355 (5th Cir. 2007). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Moore v. Ashland Chemical Inc.*,* 151 F.3d 269, 277 (5th Cir. 1998) (quoting General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997)).

In Daubert, the "Supreme Court identified a non-exclusive list of factors for a district court to consider in determining reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community." JRL Enterprises, Inc. v. Procorp Assoc's, Inc., No. 01-2893, 2003 WL 21284020 at *1 (E.D. La. June 3, 2003) (Fallon, J.).

Accordingly, an expert opinion must be excluded as unreliable if it is based on "speculation or conjecture," or if its methodology and conclusions lack a sufficient analytical connection. United States v. Cytogel Pharma, LLC, No. 16-13987, 2018 WL 6169266 (E.D. La. Nov. 26, 2018) (Morgan, J.). If the expert's data or methodology are inadequate to support the conclusions reached, then Daubert and Rule 702 **mandate** the exclusion of the unreliable testimony. See Heller v. Shaw Industries, Inc., 167 F.3d 146, 153 (3d Cir. 1999).

When expert testimony is challenged under Daubert, the burden of proof rests with the party seeking to present the testimony. Moore v. Ashland Chemical, Inc., 151 F.3d 269, 276 (5th Cir. 1998) (en banc). To meet this burden, the party "cannot simply rely on their expert's

- 11 -

assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required." United Fire Group v. Duro-Last, Inc., No. 05-1499, 2006 WL 5086616 at *3 (E.D. La. Sept. 21, 2006) (Engelhardt, J.). Plaintiffs cannot meet their burden here.

**2.      The proposed testimony of Berger and Griffor should be excluded because it is inconsistent with Fifth Circuit law regarding substantial similarity.**

**a.      Legal standards for copyright infringement.**

As set forth in detail in Defendants' concurrently-submitted motion for summary judgment, to establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) actionable copying of protectable expression. See Feist Publications, Inc. v. Rural Tel. Service Co., 499 U.S. 340, 361 (1991). The second component – "actionable copying" – requires plaintiff to establish both "factual copying" and "substantial similarity." See Nola Spice, 783 F.3d at 549.

Evaluating substantial similarity involves a two-step process. First, the Court must "distinguish between protectable and unprotectable elements of the copyrighted work." Id. at 550 (citations omitted). This step is critical, because "anyone may copy uncopyrightable elements in a copyrighted work." Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1347 (5th Cir. 1994). Second, after filtering out the unprotected expression, the Court must conduct a "side-by-side comparison" to assess whether "the allegedly infringing work bears a substantial similarity to the **protectable** aspects of the original work," based on "the perspective of a 'layman' or 'ordinary observer.'" Nola Spice, 783 F.3d at 550 (citation

- 12 -

omitted); Positive Black Talk v. Cash Money Records, 394 F.3d 357, 374 (5th Cir. 2004) (emphasis added).[25]

The "filtering" requirement is based on the principle that copyright does not protect ideas or facts, and only protects expression that is "original." 17 U.S.C. § 102; Feist, 499 U.S. at 345. Moreover, "when an idea can be expressed in very few ways, copyright law does not protect that expression, because doing so would confer a de facto monopoly over the idea. In such cases, idea and expression are said to be merged," and the "merged" expression also must be disregarded in the substantial similarity analysis. Kepner–Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 533 (5th Cir. 1994). Similarly, the scènes-à-faire doctrine excludes from protection "expressions that are standard, stock or common to a particular subject matter or are dictated by external factors." Engineering Dynamics, 26 F.3d at 1344, 1347 (citations omitted). Under these controlling principles, copyright law does not protect, and an infringement action cannot be based on, use of anatomical features. Nola Spice, 783 F.3d at 551; Blehm, 702 F.3d at 1204; Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004) (an "upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll face. That idea belongs not to Mattel but to the public domain").

Of particular importance here, the Fifth Circuit expressly held in Nola Spice that a copyright owner cannot create a genuine factual dispute over "substantial similarity" by relying on public statements about the supposed resemblance between or "confusion" over the two works at issue, particularly where those statements fail to distinguish between protected and unprotected expression. In Nola Spice, the copyright owner of a Mardi Gras "bead dog" design

---

[25] Abrogated by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010), on an unrelated issue (namely, whether registration of copyright is a precondition to filing an infringement claim).

- 13 -

offered as evidence statements that "its customers were confused about the relationship between Nola Spice's bead dogs and Haydel's mascot," including a sworn statement that the owner "personally heard several customers of Haydel's Bakery asking whether Nola Spice Designs sells Haydel's" design.  Id. at 552.  The court held that these statements did not create any triable issue of fact, because the statements were based on a comparison of the two designs "in their entirety, and would therefore have been based largely on unprotectable elements."  Id. at 553.

  **b.**  **Berger and Griffor both purport to compare the works at issue without distinguishing between their protected and unprotected elements.**

Both Berger and Griffor disregard the critical legal requirements discussed above.  The first step in evaluating substantial similarity is to filter out unprotected elements of the works, including generic ideas, anatomical features, and unoriginal depictions such as showing babies with blue eyes and fat double chins.  See Nola Spice, 783 F.3d at 550, 551.[26]  "Where there are both protectible and unprotectible elements of a work, the court must attempt to extract the unprotectible elements from … consideration and ask whether the protectible elements standing alone are substantially similar."  Batiste v. Najm, 28 F. Supp. 3d 595, 605 (E.D. La. 2014).  Berger and Griffor both fail to "filter out" unprotected expression before concluding that HDD Mask and KCB are substantially similar.

Berger's conclusion, and the random tweets and Internet posts on which he relies, are based on a general impression that the HDD Mask and KCB look alike when considered as a whole, without filtering out unprotected expression.  This "evidence" is irrelevant to substantial

---

[26] Defendants' motion for summary judgment contains an extensive discussion supported with voluminous evidence demonstrating that most of the alleged similarities between the works here are stock, standard, or generic for depictions of babies, and hence, are not protectable by copyright law.

- 14 -

similarity. Unauthenticated Internet posts, when used in this manner, are inadmissible hearsay.[27] But even if they were admissible, they are entirely irrelevant to an analysis of substantial similarity under controlling Fifth Circuit precedent, and therefore cannot be relied upon by an expert purporting to offer an "opinion" on substantial similarity.

The Griffor Report is even more egregious. He **emphasizes** that he did not undertake the filtering out requirement; instead, he relied primarily on the **unprotectable** elements of KCB to reach his conclusion: "This task seeks to answer the question of given an image, *to identify all objects found in the image* including their location and category they belong to."[28] In looking at "all objects found" in KCB and HDD Mask, Griffor necessarily considers – and, indeed, focuses on – unprotectable elements, including basic anatomical features, and common, unoriginal depictions of babies' features like blue eyes, blushed or chubby cheeks, open mouths with teeth, and double chins.[29] He affirmatively admits that he found these basic facial features to be "more relevant" to his analysis than any protectable elements of KCB and the HDD Mask.[30] But eyes, cheeks, mouth, and teeth are anatomical features that are unprotected by copyright; the fact that both KCB and the HDD Mask contain these elements may not be considered in evaluating substantial similarity. Nola Spice, 783 F.3d at 551.

---

[27] See, e.g., Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005) (rejecting use of newspaper report to prove truth of police officer's conduct, as described in articles, calling it "classic, inadmissible hearsay"); Poneman v. Nike, Inc., 161 F. Supp. 3d 619, 630 (N.D. Ill. 2016) ("tweets are inadmissible hearsay"). Berger's reliance on articles about Plaintiffs' filing of the lawsuit also are inadmissible hearsay; such publications – which merely reported on Plaintiffs' own allegations – also are meaningless to an evaluation that includes both sides.

[28] Griffor Report at p. 6 (emphasis added).

[29] Griffor Report at p. 9 (describing Griffor's analysis as focusing on: "centered/wide (staring) aligned eyes; prominent/raised forehead boundary region (3-part boundary/'triangle-shaped'); pronounced, symmetric varying-intensity redness regions ('cheeks'); blue-turquoise eye color region; dipping deformed lower lip region; open mouth (white tooth/teeth/dark background; double chin.").

[30] Griffor Report at p. 6.

- 15 -

Because Berger and Griffor failed to filter out the unprotected expression in the works, their opinions cannot be considered as evidence of substantial similarity.  Their opinions will not assist the Court, and should be excluded for this reason alone.

**3.      The Court should exclude Berger's and Griffor's proposed testimony because substantial similarity cannot be shown through expert testimony.**

To put it bluntly, there is no role in the copyright "substantial similarity" analysis for expert testimony.  In Batiste, this Court stated "substantial similarity" in areas such as "film or music" should be "judged strictly from the perspective of the ordinary lay listener or observer." Batiste, 28 F. Supp. 3d at 605.  Expert testimony on the issue of substantial similarity is appropriate only in extremely complex areas, such as computer programming, which is "not readily comprehensible to the lay person."  See 4 Nimmer on Copyright § 13.03[E][1][a] (2000) (under "the ordinary observer or audience test used in making this factual determination, a layman must detect piracy 'without any aid or suggestion or critical analysis by others.'" … the trier of fact [must] then decide whether there is substantial similarity in the expressions of the ideas so as to constitute infringement).

The "ordinary observer" perspective effectively rules out the use of expert testimony for the second part of the substantial similarity analysis.  See Express, LLC v. Fetish Group., Inc., 424 F. Supp. 2d 1211, 1228 (C.D. Cal. 2006) ("expert testimony may not be considered" in determining "whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar"); see also Mattel, Inc. v. MGA Entm't, Inc., 2011 WL 13128409 at *5 (C.D. Cal. Jan. 26, 2011) (rejecting alleged expert testimony using survey evidence of substantial similarity).  Even "expert opinion" on substantial similarity offered by David Nimmer, the author of the foremost treatise on copyright law, has been rejected in federal court.

4837-0865-1708v.5 0103245-000015

Nimmer's expert report contains approximately 20 paragraphs of comparisons between the objective elements of [the two works]. . . . Nimmer ultimately opines that: . . ."the facts at bar present a situation in which substantial similarity presents a triable issue of fact – a reasonable factfinder could conclude, based on all the circumstances, that defendants actionably copied from plaintiff's screenplay." . . . . The Court agrees that Nimmer's expert report is not admissible.

Gable v. NBC, 727 F. Supp. 2d 815, 832-33 (C.D. Cal. 2010), aff'd, 438 Fed. Appx. 587 (9th Cir. 2011); see also Mattel, Inc. v. MGA Entertainment, Inc., 2011 WL 13128409 at *1 (rejecting expert report by former U.S. Register of Copyright).

The substantial similarity issue here involves a king cake baby character who appears at basketball halftime shows during Carnival Season, and a mask worn by the killer in a horror film. These are not the types of "extremely complex" areas for which expert testimony is helpful; a comparison of the works at issue here is "readily comprehensible to a layperson." For this reason, the Court should exclude any testimony by Berger or Griffor.

**4.** **The Court should exclude Berger's and Griffor's proposed testimony as unreliable because there is no scientific validity to their reasoning and methodology.**

Both Berger and Griffor incorrectly apply the trademark standard of "likelihood of confusion," rather than the correct copyright standard of "substantial similarity."[31] The Berger Report repeatedly conflates "confusion" and "substantial similarity,"[32] while Griffor concludes

---

[31] See Streamline Production, 851 F.3d at 450 ("likelihood of confusion" standard applies to registration and infringement of trademarks).

[32] See, e.g., Berger Report at p. 3 ("[w]e can determine lay person's [sic] perception of substantial similarity and/or confusion. …"; "… analyzing real world evidence of layperson's perception of substantial similarity and/or confusion"; "Social media is perhaps the best test of seeing confusion. …")

4837-0865-1708v.5 0103245-000015

that his analysis "demonstrates, to a reasonable degree, a mathematical probability of **public confusion between the mask images in question**."[33]  The reasoning of both reports is suspect because both seek to address a standard that does not apply in this case.

To the extent Berger's report contains any "methodology" at all, it is unsound and should be rejected.  His report consists entirely of a review of tweets and other Internet posts, followed by his "expert" opinion – based on no analysis whatsoever – that these unauthenticated, mostly anonymous online posts are evidence that there is public "confusion" over the works at issue. The report cites no scientifically accepted method whereby professionals are needed to review and regurgitate social media posts or media coverage of a lawsuit about expressive works to determine if the works are "substantially similar."  Defendants' research has not identified a single copyright infringement case in which such "expert" testimony was offered, much less allowed.

There is no scientific validity to the Berger Report's methodology.  That 73 tweets over a six-year period purport to comment on "similarities" between KCB and the HDD Mask proves nothing.  There are 500 million tweets per day, or almost 6,000 tweets per second.[34]  Contrary to Berger's assertion that he has uncovered a "large quantity of social media activity,"[35] 73 tweets in six years is an infinitesimally small number.

Moreover, Twitter is a self-selecting forum.  Although 66 Twitter users[36] chose to tweet about a perceived resemblance between the works at issue, there is no way to know whether they

---

[33] Griffor Report at p. 5 (emphasis added).

[34] "Twitter Usage Statistics," https://www.internetlivestats.com/twitter-statistics/ (last visited May 6, 2020).

[35] Berger Report at pp 4-5.

[36] Two users cited by Berger (@jeffkramer327 and @Kevin_J_Loria) appear to have each tweeted twice.  Five others tweeted years before *Happy Death Day*, or even its trailer, were

4837-0865-1708v.5 0103245-000015

are representative of the ordinary observer, because Berger makes no attempt to analyze how many other observers did **not** see any substantial resemblance between the works.[37]  Nor did he make any attempt to examine whether the individuals posting on Twitter were sincere or snarky, or whether they even had viewed the works.  It does not take a statistician to recognize that these self-selected social media posts do not constitute a random sample of laypersons, or that no control group was used.  Nor does Berger delve in to who the "tweeters" were – whether they were "bots," people associated with Plaintiffs or KCB, or others with an ax to grind – or whether people replied, re-tweeted, agreed, disagreed, or in any way engaged with the tweets.

But in any event, what some number of Twitter users may think does not prove substantial similarity.  As one federal appeals court explained, "[t]he 'substantial similarity' that supports an inference of copying sufficient to establish infringement of a copyright is not a concept familiar to the public at large.  It is a term to be used in a courtroom to strike a delicate balance between the protection to which authors are entitled under an act of Congress and the freedom that exists for all others to create their works outside the area protected against infringement."  Warner Bros. Inc. v. ABC, Inc., 720 F.2d 231, 245 (2d Cir.1983).

Equally meaningless is the Berger Report's discussion of "presentations in the mass media."[38]  Berger simply ran a Google search for "King Cake Baby lawsuit."  Not surprisingly, the "hits" this primitive approach uncovered articles **about this lawsuit**, which typically described **Plaintiffs' allegations**.  There is no need for an expert to conduct this type of Google

---

released; these tweets make jokes about KCB, with no references at all to the HDD Mask or the Films.  Berger Report Ex. A.

[37] For instance, at least one Twitter user thought that HDD Mask looked like "Dancing Baby," a/k/a/ the "Oogachacka Baby," an internet meme from 1996. *See* https://twitter.com/ ABleedingCorpse/status/919422706281574400?s=20  (last visited May 8, 2020).

[38] Berger Report at pp 7-9.

4837-0865-1708v.5 0103245-000015

search – anyone with Internet access can do this.  Citing the musings of journalists and Internet kibitzers about a copyright lawsuit, based on a one-sided presentation, is not a reliable scientific approach.

Griffor's work also is inapplicable to the facts in this case.  First, Griffor's expertise is in the area of **human** facial recognition.[39]  There is nothing in the Griffor report that validates, or even discusses, the use of human facial recognition software to a static, inanimate depictions of a cartoonish face, such as the works at issue here.  Indeed, there is no indication that Griffor ever has used his algorithms to compare dolls, masks, sculptures, toys, cartoons, or any other expressive works with fixed, unchanging expression.  Second, Griffor's experience and expertise is with **adult** drivers or pedestrians.  Nothing in the Griffor Report validates the use of artificial intelligence to compare faces of **babies**, which notoriously look more like other babies than human adult faces resemble each other.

Finally, as discussed above both Berger and Griffor erroneously apply the trademark standard of "likelihood of confusion."  Because their methodologies are unproven and their conclusions are not reliable, the Court should exclude both Berger and Griffor.

**5.      The Court should exclude Berger and Griffor as unreliable, because they have no experience or expertise in copyright.**

Plaintiffs' two "experts" also should be excluded on the independent ground that neither of them has any experience or expertise in any subject at issue in this action.

Although Plaintiffs generously describe Berger as an expert in "intellectual property evaluation and sample surveying,"[40] it is plain that his experience and expertise is only in trademark evaluation and surveying, not copyright.  Berger did not attempt to conduct a

---

[39] Griffor Report at p. 6.

[40] Plaintiffs' Designation of Expert Witnesses at p. 1.  .

4837-0865-1708v.5 0103245-000015

scientifically reliable survey of any kind in this case – and even if he had, any such survey would not be admissible in this copyright action.[41]  Berger's teaching credentials include numerous courses on marketing, but none on copyright.[42]  His work experience also is in marketing.[43]  Berger has published two books about trademark surveys, but none on copyright.[44]  His publications appear to focus exclusively on trademarks.[45]  His report and *curriculum vitae* does not identify a single instance of Berger doing any work related to alleged copyright infringement.

Even in the trademark area, Berger's expert testimony has been rejected by at least two courts.  See Vista Food Exchange, Inc. v. Vistar Corp., 2005 WL 2371958 at *7 (E.D. N.Y. Sept. 27, 2005) (excluding survey conducted by Berger because it was "flawed to the point that its probative value [was] substantially outweighed by the survey's potential for unfair prejudice and confusion"); Powerhouse Marks LLC v. Chi Hsin Impex, Inc., 2006 WL 897254 at *4 (E.D.

---

[41] See, e.g., Minka Lighting, Inc. v. Craftmade Int'l, Inc., 2002 WL 1331883 at *5 (N.D. Tex. June 14, 2002), aff'd, 93 F. App'x. 214 (Fed. Cir. 2004) ("in the copyright infringement context, trial courts have refused to consider survey evidence purportedly showing a substantial similarity between an accused and protected work where the court determined, as a matter of law, that no substantial similarity existed"); Mattel, Inc. v. MGA Entertainment, Inc., 2011 WL 13128409 at *6  (rejecting survey on substantial similarity: "Given the irrelevance and unduly prejudicial nature of [the expert's] report and opinion, the Court need not reach [the defendant's] separate challenge to [the expert's] qualifications and the methodology applied by his report"); DuBay v. King, 366 F. Supp. 3d 1330, 1349 (M.D. Fla. 2019) (plaintiffs' arguments that expert "demonstrates the substantial similarities of the characters because he purportedly conducted research into the response of 'lay audience' …. are misguided").

[42] Berger Report at p. 9.

[43] Berger Report at p. 11.

[44] Berger Report at pp. 9-10.

[45] Berger's publications include:  "The Descriptive/Suggestive Conundrum in Trademark Surveys; The Pre-Litigation Pilot Trademark Survey; Frequently Asked Questions About Trademark Surveys"; "10 Common Myths About Trademark Surveys; Will A Survey Help Win A Likelihood of Confusion Case?"; "Will a Survey Enhance the Chances of Winning a Trademark Case"; "Ten Things to Avoid When Doing Trademark Surveys; Costs, Expectations and Methodologies for Trademark Surveys"; "Why the Internet Has Become the Smart Way To Do Trademark Surveys"; and "Ten Best Practices for Trademark Surveys."  Berger Report at p. 12.

- 21 -

Mich. Apr. 5, 2006) (finding Berger's survey results "too unreliable to be admissible"). Simply stated, Berger fails the "threshold issue" of being qualified by experience, training, education, or skill as an expert in the area of copyright infringement, the only claim at issue here.

Griffor's credentials likewise are unrelated to any subject at issue in this action. His experience is "in the field of target recognition, applied mathematics and artificial intelligence,"[46] but this case has nothing to do with those subjects. Griffor's Report and his *curriculum vita* show his primary experience is in designing self-driving cars,[47] and in "mathematical and scientific research," "electrical and electronics engineering," computer science and mathematical theory,[48] not in assessing substantial similarity between two expressive visual works. Within the general realm of self-driving car artificial intelligence, Griffor's more specific experience and expertise is in the study of other drivers' emotions, to identify "calm, fear and aggression,"[49] and their facial expressions, such as "'startle' or staring expressions."[50] Griffor's university degrees are in mathematics and electrical engineering.[51] His publications are on esoteric high-level mathematical issues.[52] He has provided exert opinions on vehicle cyber-security and the "mathematical fundamentals of AI and ML technologies"[53] But even if this might be impressive if considered in the relevant field, it is completely **irrelevant** to substantial

---

[46] Plaintiffs' Designation of Expert Witnesses at p. 2.

[47] Griffor Report at pp. 4-5.

[48] Griffor Report at pp. 10-13.

[49] Griffor Report at p. 4.

[50] Griffor Report at p. 5.

[51] Griffor Report at pp. 14-15.

[52] Griffor Report at pp. 15-17. Griffor's publications include "Mathematical Theory of Domains"; "Definability of E(alpha)"; "Inaccessibility in constructive set theory and type theory"; "Pi-one-one Determinacy and Completeness for Beta-Logic"; and "Equalization for Bilators."

[53] Griffor Report at pp. 1-187.

4837-0865-1708v.5 0103245-000015

- 23 -

similarity of protectable expression in a copyright case, the issue on which his opinion is offered. Substantial similarity turns on how a lay observer would perceive the works' protected expression, after unprotectable elements are "filtered out," not on whether a professor believes a computer algorithm might identify similar shapes in two works viewed in their entirety.

## CONCLUSION

There is no place for expert opinion in the analysis of substantial similarity, much less the opinion of experts like Berger and Griffor, who do not bother to filter out unprotected elements of the works at issue.  Moreover, neither Berger nor Griffor has experience, expertise, or credentials in evaluating claims of copyright infringement.  Berger's experience in trademark surveys, and Griffor's experience in artificial intelligence and mathematics, are irrelevant here.

Berger's reliance on summarizing social media posts and other Internet views demonstrates his lack of valid scientific reasoning or methodology, and his report does not meet any standard of reliability.  Griffor's scientific methodology is used to assess adult human facial expressions, not to compare cartoonish baby masks, rendering his technical results meaningless.

For all these reasons, this Court should exclude the "expert opinions" of Berger and Griffor.

DATED: May 12, 2020                          Respectfully submitted,

                                            **DAVIS WRIGHT TREMAINE LLP**


                                               */s/Kelli L. Sager*
                                            Kelli L. Sager (*pro hac vice*)
                                               kellisager@dwt.com
                                            865 South Figueroa Street, 24th Floor
                                            Los Angeles, California  90017-2566
                                            Telephone:  (213) 633-6800
                                            Fax:  (213) 633-6899

- 23 -

4837-0865-1708v.5 0103245-000015

Eric M. Stahl (*pro hac vice*)
  ericstahl@dwt.com
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone:  (206) 757-8148
Fax:  (206) 757-7148

**PHELPS DUNBAR LLP**

Mary Ellen Roy, T.A. (La. Bar #14388)
  roym@phelps.com
Dan Zimmerman (La. Bar #2202)
  dan.zimmerman@phelps.com
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311

ATTORNEYS FOR DEFENDANTS
UNIVERSAL CITY STUDIOS LLC,
UNIVERSAL CITY STUDIOS PRODUCTIONS
LLLP, BLUMHOUSE PRODUCTIONS, LLC,
TREE FALLS IN THE WOODS, L.L.C.,
ANTHONY "TONY" ROBERT GARDNER, THE
ALTERIAN GHOST FACTORY, INC., TRICK
OR TREAT STUDIOS, AND FOE PAW FILMS,
LLC

- 24 -