## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JONATHAN BERTUCCELLI et al.,** | **CIVIL ACTION** |
| **Plaintiffs,** | **NO. 2:19-cv-01304-GGG-JCW** |
| **v.** | **JUDGE:** |
| **UNIVERSAL CITY STUDIOS LLC et al.,** | **GREG GERARD GUIDRY** |
| **Defendants.** | **MAGISTRATE JUDGE:** |
| | **JOSEPH C. WILKINSON, JR.** |
| | **SECTION T-2** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.   SUMMARY OF ARGUMENT

This lawsuit arises from Plaintiffs' allegation that the mask of a cartoonish baby face, used as a prop in the 2017 feature film *Happy Death Day* and its sequel ("Films") (the "HDD Mask"), infringes their copyright in "King Cake Baby" ("KCB"), an oversized "walking head" figure made for the New Orleans Hornets in 2009.  Although illustrations of babies have existed for centuries – and depictions of baby faces with exaggerated, cartoonish, or offbeat features long predate Plaintiffs' sculpture – Plaintiffs seek a monopoly on this genre, asserting a copyright claim based on such generic features as the shape of a baby's head, blue eyes, and blushed cheeks.[1]  But copyright law does not, and cannot, extend this far.

---

[1] E.g., Doc. 83 (Second Amended Complaint ("Complaint")) ¶ 36.

4832-1819-8204v.1 0103245-000015

To the contrary, for Plaintiffs to meet their burden of establishing that Defendants' HDD Mask is "substantially similar" to KCB, as copyright law requires, they cannot rely on the concept of a cartoonish baby, or on anatomical features and generic elements.  See Nola Spice Designs, L.L.C. v. Haydel Enters, Inc., 783 F.3d 527, 550 (5th Cir. 2015).  Once these unprotectable elements are excluded – as they must be, when the works are compared, under controlling Fifth Circuit authority – it is plain that the HDD Mask and KCB are **not** substantially similar, or even similar at all.  KCB is a Mardi-Gras-themed, diapered baby boy who provides halftime entertainment at home games for New Orleans' NBA team during Carnival Season.  The HDD Mask depicts the mascot of a fictional university where the Films take place; it is worn by an adult murderer clad in a dark hooded sweatshirt, with feminine features that hint at the killer's identity.  Although both works have facial features common to depictions of babies, the expression of those features is decidedly different.

Under these circumstances, the Fifth Circuit has made clear that there is no basis for a copyright infringement claim as a matter of law.  See Nola Spice, 783 F.3d at 551 (no substantial similarity in two Mardi Gras "bead dogs" jewelry pieces).  This fatal flaw defeats Plaintiffs' claims against all of the Defendants.[2]

## II.    STATEMENT OF FACTS

### A.    The *Happy Death Day* Films and HDD Mask.

*Happy Death Day*, released on October 7, 2017, is a horror-comedy movie that has been

---

[2]  Defendant Blumhouse developed both Films; it formed single-picture entities to produce the first Film and the sequel (Defendants Tree Falls in the Woods and Foe Paw Films, respectively).  Defendant Tony Gardner and his studio, Defendant Alterian Ghost Company, designed the HDD Mask.  The two Defendant Universal entities financed and distributed the Films.  Defendant Trick or Treat Studios, which sells costumes, licensed the mask from Universal for retail sale to consumers.  See Doc. 83 (Complaint) ¶¶ 8-15.

4832-1819-8204.v.1 0103245-000015

described as a "slasher *Groundhog Day*."[3]  It depicts self-absorbed college student Tree

Gelbman, who repeatedly lives through her birthday, during which she is murdered by a killer

wearing a mask of her school's mascot.  Each time Tree re-lives her "death day," she gets closer

to figuring out the identity of the killer (who is disguised in a dark hoodie, dark pants, and the

mask).[4]  A sequel, *Happy Death Day 2U*, involves several of the same characters, including a

killer who wears the HDD Mask.[5]

       The only relevance the mask has in the Films is to provide a means of disguising the

killer; the particular school mascot is not a significant element of the Films.  In fact, when

Blumhouse approved *Happy Death Day* for development in February 2016, the screenplay only

described the mask generically, as an unidentified "school mascot."  That was still the case six

months later, when Universal agreed to finance the Film.[6]  The characters, plots, settings, and

sequence of events in each of the Films would be entirely the same, regardless of the particular

"mascot" depicted.[7]  The mascot appears on screen for less than 5 minutes in the first Film

(including credits), and 3 ½ minutes in the sequel – typically in flashes of two seconds or less.[8]

       **B.       Development of the HDD Mask.**

       In August 2016, eleven weeks before filming began, *Happy Death Day*'s director Chris

---

[3]  LR 56.1 Statement of Undisputed Facts ("SUF") 1; Landon Decl. ¶ 3.

[4]  Landon Decl. ¶ 3.  Spoiler alert: the killer turns out to be Tree's jealous sorority roommate. Morales Decl. Ex. A (DVD).

[5]  SUF 2.

[6]  Landon Decl. ¶ 5 & Ex. D; Gardner Decl. ¶ 6 & Ex. B.  Earlier drafts of the screenplay depicted the killer without any mask at all, or described the killer as wearing a mask of a Greek statue, or a panther.  Landon Decl. ¶¶ 4-5 & Exs. A-C.

[7]  Landon Decl. ¶ 4; Morales Decl. Exs. A, B (DVDs).

[8]  These time calculations include all appearances of the college "mascot," not just the HDD Mask; the mascot appears in the Films on a banner, on t-shirts and in other depictions that vary in appearance from the HDD Mask (and are not claimed to be infringing).  Morales Decl. ¶ 5 & Exs. A, B (DVDs); id. Exs H-I (listing of appearances by time).  The full-sized "baby mascot" differs significantly from the full-sized KCB.  See Morales Decl., Exs. G, M; see also note 56.

Landon began exchanging ideas for the mascot with Blumhouse creative executive Ryan Turek. For reference, Turek conducted an internet search for "creepy mascots," which turned up numerous existing mascots, including KCB.[9]  They also reviewed many other images in their research, including animals and vintage clowns, among others.[10]

Landon subsequently hired Gardner to create an original mascot mask for the movie. Landon had worked with Gardner before, and knew him to be one of the top special effects designers in the film industry.[11]  In his 36 years in the business (starting with makeup work on Michael Jackson's *Thriller* video), Gardner has been credited in more than 200 productions; his creations include many iterations of the "Chucky" doll from the *Child's Play* horror franchise, and the prosthetic arm James Franco wore in *127 Hours*.[12]  Gardner and Alterian were paid a total of $5,000 for their work.[13]

At the time Gardner was hired, the filmmakers had not yet decided on a particular school mascot for the Film.  Landon asked Gardner to consider two concepts – a cartoonish pig, and an oversized baby.[14]  Gardner and his team initially worked exclusively on the pig.[15]  After they made two versions of a pig mask, Landon asked Gardner to also create a "big baby" for comparison; previously, the two had discussed a baby mask only in general terms, as an oversized face with exaggerated features.[16]  Gardner was aware of previous works depicting

---

[9]  Landon Decl. ¶ 6; Morales Decl. Ex. N (Turek Dep.) 16:8-18:20.9.  Defendants do not dispute that they had access to images of KCB (along with many other images), but "access" to a copyrighted work does not prove infringement, nor is it relevant to "substantial similarity," the issue raised in this Motion.  See Section III.A, infra.

[10]  Landon Decl. ¶ 6; Morales Decl. Ex. N (Turek Dep.) 16:8-18:20

[11]  SUF 3; SUF 4; Gardner Decl. ¶ 4; Landon Decl. ¶ 7.

[12]  Gardner Decl. ¶ 3.

[13]  Gardner Decl. ¶ 4.

[14]  SUF 5.

[15]  Gardner Decl. ¶ 7.

[16]  SUF 6; Gardner Decl. ¶ 7 & Ex. C; Landon Decl. ¶ 8.

4

babies in a cartoonish or bizarre manner, including the comical Baby Herman from the 1988 film
*Who Framed Roger Rabbit*; the mask from the 1985 film *Brazil*; the iconic *Chucky* doll; and
other images, including one of KCB sent by Landon.[17]

    

| **"HDD MASK"** | **Baby Herman** | **"Brazil"** | **"Chucky"** | **KCB** |
|---|---|---|---|---|

Gardner's baby mask was not copied from any prior work.[18]  He and his staff at Alterian created
the HDD Mask independently, working from  a "lifecast bust" from a mold of an actual actor's
face, with standard facial anatomy (eyes, nose, ears, etc.).[19]  This was done both for functionality
– the HDD Mask was to be worn by an actor – and to make the mask recognizable as a human
baby.[20]  But within these parameters, Gardner (in consultation with Landon and Turek) made
artistic choices regarding each facial element of the mask[21] – the sorts of choices that Bertuccelli
admits substantially affect the overall appearance of a depiction of a face.[22]  Each of Gardner's
choices was designed to create an exaggerated, cartoonish and androgynous look that was
identifiable as a baby, but with unsettling features (including "adult" dimensions) that are distinct
from real babies.[23]  The first image above shows the final version of the HDD Mask.[24]

---

[17]  SUF 7; Gardner Decl. ¶ 8 & Exhibits C-F.  As Bertuccelli acknowledges, it is not unusual
for artists to review "prior art" to inspire ideas for new works.  SUF 8.
[18]  Gardner Decl. ¶ 8 & Ex. A, D.
[19]  SUF 9.
[20]  SUF 10.
[21]  SUF 11.
[22]  SUF 12; see Morales Decl. Ex. J (Bertuccelli Dep.) 36:17-37:7 (noting "the look changes" if
"facial features change").  As detailed below, Gardner's choices for each element of the HDD
Mask differ substantially from those Bertuccelli made in creating KCB.  See Section III.C.
[23]  SUF 13.
[24]  See Gardner Decl. ¶ 4 & Ex. A.

The creative choices made by Gardner and his team included the following:

- **Overall shape**:  To make the mask recognizable as a baby, Gardner gave it typical features such as chubby cheeks, blue eyes, and "baby fat" around the neck and chin.[25]  But the HDD Mask has an absurdly oversized forehead, which Gardner regarded as an homage to the *Brazil* mask.[26]  He also deliberately placed the ears far enough back on the head so that they would not be visible head-on,[27] and opted to make the HDD Mask hairless, with no eyebrows, to add to its eerie appearance.[28]

- **Eyes**:  Gardner deliberately made the eyes unrealistic: the pupil and iris are comically half-moon shaped, like a tunnel from the *Road Runner* cartoon.[29]

- **Mouth**:  The HDD Mask's mouth has an extremely U-shaped upper lip, meant to accentuate its cartoonish appearance.  It also has a single, off-center, adult-sized tooth, which Landon suggested as a way to make the appearance feel "off."[30]

- **Nose**:  Gardner gave the HDD Mask a pointed, relatively tiny nose, resembling the nose an adult might choose in cosmetic surgery rather than a typical infant nose.[31]

- **Finish**:  The HDD Mask has a scuffed, sooty finish, from an "aging" technique meant to look weathered, as if the mascot had worn it in an athletic competition.[32]

- **Gender**:  Gardner designed the HDD Mask as vaguely feminine, providing a subtle hint about the killer's identity.  This is seen in the slight eyelash and the mascara-

---

[25]  SUF 15.  Bertuccelli admits babies typically are depicted with relatively large heads, chubby cheeks and "meat on the face."  SUF 14.
[26]  SUF 16; Gardner Decl. ¶¶ 8, 11, 11(a).
[27]  SUF 16.
[28]  SUF 17.
[29]  SUF 18; Gardner Decl. ¶ 11(c).
[30]  SUF 19; Gardner Decl. ¶ 11(e) & Ex. J; Landon Decl. ¶ 8. 26.
[31]  SUF 20; Gardner Decl. ¶ 11(d).
[32]  SUF 21; Gardner Decl. ¶ 11(g) & Ex. K; Landon Decl. ¶ 8.

6

like application at the edge of the eyes, and the cupid's bow in its upper lip.[33]

On October 4, 2016, Gardner shipped the masks to Landon, who was already in New Orleans preparing to start filming.[34]   Images of the completed masks are below:[35]



Landon, who had the final say over which mask to use, spent the next week conducting a "bake off" between the two masks.  About three weeks before shooting began, he chose the baby, after seeing a crew member's startled reaction to it.[36]

### C.      Plaintiffs and KCB.

Plaintiff Bertuccelli is the majority owner and sole employee of Plaintiff Studio 3, a New Orleans business that makes parade floats and similar works.[37]  In September 2009, the New Orleans Hornets (now the Pelicans) asked Bertuccelli to make three Mardi Gras-themed "walking head" figures for the team to use for halftime "mascot races."[38]  In the initial email to Bertuccelli, the team suggested Mardi Gras characters, like "a jester, king, king cake with baby, Mardi Gras Indian, et cetera"; the team also "attached a few pictures to give you an idea of what we are looking for."[39]  Bertuccelli made three of the figures suggested by the Hornets – a king, a

---

[33]  SUF 22.
[34]  Gardner Decl. ¶ 12 & Ex. K; Landon Decl. ¶ 9.
[35]  Gardner Decl. ¶ 12 & Ex. K.
[36]  Landon Decl. ¶¶ 9-10; Gardner Decl. ¶ 12; Morales Decl. Ex. N (Turek Dep.) 26:17-19.
[37]  Morales Decl. Ex. J (Bertuccelli Dep.) 11:25-12:15; 13:18-16:8.
[38]  SUF 23.
[39]  SUF 24.  The images attached to the email have not been produced by Plaintiffs in discovery.  Bertuccelli claims he does not remember what the images were, but they may have included depictions of babies.  Morales Decl. Ex. J (Bertuccelli Dep.) 87:19-88:14.

jester, and KCB – for which he was paid a total of $15,000 ($5,500 for KCB).[40]  His design for KCB was based in part on the plastic babies that are inserted into Mardi Gras king cakes.[41]

On October 19, 2017, more than seven years after KCB's creation (and after *Happy Death Day*'s release), Bertuccelli registered the copyright in KCB with the U.S. Copyright Office.  The registration names Bertuccelli as the sole author and copyright claimant of KCB, which he registered as a "sculptural work."[42]

### D.     Procedural History.

Plaintiffs filed this action on February 12, 2019, and have amended the complaint twice to add additional defendants.[43]  The Complaint, which seeks millions of dollars in damages, alleges all eight Defendants are liable for copyright infringement, claiming the HDD Mask "is identical to the look and visual aspects of" KCB.[44]  The Complaint recites random purported similarities between the two works, including that both are "mascots," have "blue eyes," "blushed" and "large baby type cheeks," and "open mouth showing" teeth or a tooth.[45]  The Complaint includes side-by-side, cropped photos of the works, using an image of the HDD Mask that Plaintiffs copied from an unidentified third party's Internet post;[46] that image truncates the HDD Mask, obscuring its sloped forehead and full cheek structure.  Below are representative images of the HDD Mask as actually seen in the Films:[47]

---

[40]  SUF 25; Morales Decl. Ex. J (Bertuccelli Dep.) 64:7-65:8.  Bertuccelli and the team later had a dispute over the rights to KCB (id. at 170:2-10; 171:1-6; 181:1-182:16; 184:10-185:7), which they recently resolved.

[41]  SUF 26.

[42]  SUF 27.

[43]  Docs. 1, 15, 83.

[44]  Doc. 83 (Complaint) ¶ 30.  Plaintiffs also seek an injunction, on grounds that are derivative of their copyright claims.  Id. ¶¶ 53-111.

[45]  Doc. 83 (Complaint) ¶ 36.

[46]  Doc. 83 (Complaint) ¶ 30; SUF 30.

[47]  See  Morales Decl. ¶ 4 & Ex. C, E, G (stills from movie); id. Ex. A (DVD).

  

### III.   PLAINTIFFS' COPYRIGHT CLAIMS FAIL BECAUSE THE HDD MASK IS NOT SUBSTANTIALLY SIMILAR TO KCB.

Summary judgment must be granted on any claim for which "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A plaintiff opposing a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts"; the motion must be granted unless plaintiff comes forward with "specific facts showing that there is a **genuine issue for trial**."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The facts must be supported by competent, admissible evidence.  See, e.g., Bellard v. Gautreaux, 675 F.3d 454, 460 (5th Cir. 2012) (in opposing summary judgment, "evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial."); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) ("a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence").

### A.   Absence of Substantial Similarity May Be Determined on Summary Judgment.

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid

9

copyright, and (2) copying of constituent elements of the work that are original." Feist Publs., Inc. v. Rural Tel. Service Co., 499 U.S. 340, 361 (1991); see also id. at 348 ("[o]riginality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.")[48] The second component – copying of "original" elements of a work – requires plaintiff to establish both "factual copying" and "substantial similarity." Nola Spice, 783 F.3d at 549. This Motion concerns the latter element: plaintiffs cannot meet their burden of proving that the HDD Mask is "substantially similar" to protectable expression in the KCB.[49]

Evaluating substantial similarity involves a two-step process. First, the Court must "distinguish between protectable and unprotectable elements of the copyrighted work." Nola Spice, 783 F.3d at 550 (citations omitted). See Section B, infra. Second, after filtering out the unprotected expression, the Court must conduct a "side-by-side comparison" to assess whether "the allegedly infringing work bears a substantial similarity to the **protectable** aspects of the original work," based on "the perspective of a 'layman' or 'ordinary observer.'" Nola Spice, 783 F.3d at 550 (citation omitted). As discussed below, the "protectable elements" limitation is key;

---

[48]  For purposes of this Motion, Defendants do not contest Plaintiff Bertuccelli's current ownership of the copyright in KCB. But Plaintiff Studio 3 does not appear to own **any** copyright in KCB: it is not named in the copyright registration for KCB, and no writing grants it any rights in the work. Bertuccelli testified that he considers Studio 3 a co-owner of the work because, he says, "I am Studio 3." SUF 27-29; Morales Decl. Ex. J (Bertuccelli Dep.) 189:20-190:24. But Bertuccelli's opinion does not create ownership rights. Studio 3's claims should be dismissed for this additional reason. Righthaven LLC v. Hoehn, 716 F.3d 1166, 1167-69 (9th Cir. 2013).

[49]  "Factual copying" may be shown if plaintiff can "prove that (1) the defendant had access to the copyrighted work before creation of the infringing work and (2) the works contain similarities that are probative of copying." Armour v. Knowles, 512 F.3d 147, 152 (5th Cir. 2007). For purposes of this Motion, it is not contested that some of the Defendants had access to KCB – but access is relevant **only** to "factual copying," which is not at issue in this Motion; access is irrelevant to the question of "substantial similarity." Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 367-68 (5th Cir. 2004).

it does not matter if certain elements in two works are similar, or even identical, if those elements are not original or otherwise unprotected by copyright.  See Sections B, C, infra.

Summary judgment "based on the absence of substantial similarity" is appropriate when the court concludes, after reviewing the works, "that no reasonable juror could find substantial similarity."  Nola Spice, 783 F.3d at 550 (affirming summary judgment after side-by-side analysis).  Courts in this Circuit routinely engage in this kind of comparison to dispose of copyright cases before trial.  See, e.g., General Univ. Sys., Inc. v. Lee, 379 F.3d 131, 142, 145-48 (5th Cir. 2004) (affirming summary judgment dismissing copyright claims for lack of substantial similarity); Sahuc v. Tucker, 300 F. Supp. 2d 461, 464-66 (E.D. La. 2004), aff'd, 166 F. App'x 157 (5th Cir. 2006) (dismissing complaint for lack of substantial similarity after side-by-side comparison of two photographs).[50]

### B.    "Substantial Similarity" Cannot Rest on Unprotectable Matter, Including Ideas, Anatomical Features, Or Expression Not Original To Plaintiffs' Work.

The first step in the substantial similarity analysis sometimes is referred to as "filtration," because the Court must apply a threshold "filter" to exclude **unprotectable** elements from consideration.  Nola Spice, 783 F.3d at 550 n.6.  This step is critical, because "anyone may copy uncopyrightable elements in a copyrighted work."  Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1343 (5th Cir. 1994).

Copyright does not protect ideas or facts, and it only protects "original" expression.  17 U.S.C. § 102; Feist, 499 U.S. at 345.  Moreover, "when an idea can be expressed in very few ways, copyright law does not protect that expression, because doing so would confer a de facto

---

[50] See also Lennar Homes of Texas Sales & Mktg., Ltd. v. Perry Homes, LLC, 117 F. Supp. 3d 913, 934-47 (S.D. Tex. 2015) (granting summary judgment after comparing works, finding protectable expression in home designs was not substantially similar); Batiste v. Najm, 28 F. Supp. 3d 595, 619 (E.D. La. 2014) (comparing dozens of pairs of songs to partially grant defendant's summary judgment motion).

monopoly over the idea.  In such cases, idea and expression are said to be merged," and the "merged" expression must be disregarded in the substantial similarity analysis.  Kepner–Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 533 (5th Cir. 1994).  Similarly, the scènes-à-faire doctrine excludes from protection "expressions that are standard, stock or common to a particular subject matter or are dictated by external factors."  Engineering Dynamics, 26 F.3d at 1344, 1347 (citations omitted).  These external dictates "need not be absolute"; rather, "[t]hey need only narrow the range of available expression such that protecting certain aspects of [plaintiff's] works would grant [plaintiff] an impermissible monopoly on designs that meet those constraints."  Lennar Homes, 117 F. Supp. 3d at 940-41.

For these reasons, copyright does not protect – and an infringement claim cannot arise from – use of anatomical features.  In Nola Spice, for example, the Fifth Circuit held that the copyright owner of a "bead dog" design – created by twisting traditional Mardi Gras beads into the shape of a dog – could not claim infringement based on a competitor's depiction of a dog's "nose, eyes, and a tail, all made of smaller beads," because "anatomical features on replicas of animals are ideas not entitled to copyright protection."  783 F.3d at 551.  The case cited with approval other appellate decisions applying this principle to cartoon figures and dolls.[51]  This rule applies even if both works depict anatomical features in an unusual or stylized way; in Nola Spice, the Fifth Circuit found the features in the works below (see 783 F.3d at 553-55) were not protectable, and that, even if they contained protectable expression, the works were not substantially similar:

---

[51] Id., citing Blehm v. Jacobs, 702 F.3d 1193, 1204 (10th Cir. 2012) ("anatomical features such as arms, legs, faces, and fingers [on cartoon figures] … are not protectable elements."); Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004) ("[a]n upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll face.  That idea belongs … to the public domain.").




**Copyright Claimant's Sculpture**                     **Alleged Infringer's Jewelry**

<u>Nola Spice</u> also held that the copyright owner could not create a genuine dispute over

"substantial similarity" by relying on public statements about the supposed resemblance of the

two works at issue; the Court noted that such statements stem "from a comparison of the two

bead dog designs in their entirety, and would therefore have been based largely on unprotectable

elements." <u>Id.</u> at 553; <u>see also</u> <u>DaVinci Editrice S.R.L. v. ZiKo Games, LLC</u>, 183 F. Supp. 3d

820, 827-28 (S.D. Tex. 2016) (excluding as irrelevant third party's declaration offering

impression that works are substantially similar).  Here, Plaintiffs have cited social media

comments in alleging that "members of the public" supposedly "recognized that the [HDD

Mask] was a copy of KCB."[52]  But even if these internet posts were admissible evidence (which

they are not),[53] under <u>Nola Spice</u> they are irrelevant to substantial similarity.

Instead, applying controlling law, it is clear that virtually all of the seven supposed

commonalities Plaintiffs allege between KCB and the HDD Mask[54] are irrelevant to whether the

works are "substantially similar," because they involve ideas or unoriginal, common elements

that copyright does not protect.

---

[52] <u>See</u> Doc. 83 (Complaint) ¶¶ 37-40.

[53] The individuals who allegedly posted these comments are unknown.  SUF 31.  The posts are
inadmissible hearsay that cannot be considered.  <u>Bellard</u>, 675 F.3d at 460 (only admissible
evidence may be considered on summary judgment); <u>Roberts v. City of Shreveport</u>, 397 F.3d
287, 295 (5th Cir. 2005) (rejecting use of newspaper report to prove police officer's conduct as
described in articles, as "classic, inadmissible hearsay"); <u>Poneman v. Nike, Inc.</u>, 161 F. Supp. 3d
619, 630 (N.D. Ill. 2016) (in trademark action, "tweets are inadmissible hearsay").

[54] Doc. 83 (Complaint) ¶ 36.

13

First, Plaintiffs claim both works are used as "mascots."  But an infringement claim cannot be based on the idea of using a baby as a "mascot," because the idea is not protectable. See, e.g., Blehm, 702 F.3d at 1204 (copyright does not protect "the idea of a cartoon figure holding a birthday cake, catching a Frisbee, skateboarding, or engaging in various other everyday activities.").  Nor is the idea original to Plaintiffs:  babies have been used as mascots for more than 100 years, and many works depict cartoonish babies as mascots.[55]  Moreover, the two works do not even depict the same type of "mascot."[56]

Second, Plaintiffs allege both KCB and the HDD Mask depict figures that viewers find "funny," although they admit the works are not "funny" in the same way.[57]  But copyright does not protect these generic concepts.  See also Schurr v. Molacek, No. CV 15-7135, 2016 WL 6680287, at *7 (E.D. La. Nov. 14, 2016) (lawsuit alleging the defendant's work "evokes the

---

[55] SUF 33.

[56] The HDD Mask depicts a fictional college sports team name, the "Bayfield University Babies"; it is a mascot akin to the New Orleans Pelican.  In contrast, KCB is not a name or logo for the New Orleans NBA team; it is a walking-head figure that appears as in-game halftime entertainment at the team's home games that take place during Carnival season, sometimes racing with other Mardi Gras-themed figures.  SUF 32.  In HDD 2U, the "baby" mascot appears at a basketball game, but it looks nothing like KCB.  See Morales Decl., Exs. G, M.  Plaintiffs do not, and cannot, allege that this depiction of a "baby" mascot infringes KCB.  See also note 61. The killer who wears the HDD Mask in the films (far right, Ex. C) also does not look like KCB; the character is only shown in black sweatpants and a black hoodie, with a normal sized head.

  

[57] Doc. 83 (Complaint) ¶ 36 (alleging KCB is "creepy, funny" while HDD Mask is "scary, funny").

same look and feel from the user" dismissed on summary judgment because it did not identify protectable elements).  Nor are these concepts original to KCB:  countless other works have depicted babies in exaggerated, frightening or other offbeat ways.[58]

Third, Plaintiffs' remaining alleged similarities all relate to the use of anatomical features – i.e., that both works have blue arched eyes, "blushed" cheeks, an "open mouth showing teeth" (KCB) or "tooth" (HDD Mask), and "large cheeks" with a "double chin."[59]  But these generic features are dictated by external constraints inherent in any depiction of a human baby, and are not entitled to copyright protection.  Nola Spice, 783 F.3d at 551.  Moreover, all of these features are unoriginal:  for centuries, babies have been depicted with blue eyes, "high arched" eyes, blushed or chubby cheeks, open mouths (including with teeth), and fat double chins.[60]  **All** of these elements must be "filtered out" before the Court compares the works.[61]

## C.   Any Protectable Expression In KCB Is <u>Dissimilar</u> To The HDD Mask.

In the second prong of the substantial similarity analysis, the Court compares only the **protectable** expressive elements, after the unprotected elements are filtered out.  The Court must

---

[58] SUF 34.

[59] Doc. 83 (Complaint) ¶ 36.

[60] SUF 35-39.

[61] Plaintiffs fail to establish substantial similarity for another, independent reason:  their alleged similarities are not an important part of their work as a whole.  Courts evaluating substantial similarity consider "the importance of the copied protectable elements to the copyrighted work as a whole."  Nola Spice, 783 F.3d at 550.  "If the similar material in [the alleged infringer's] work is not **a substantial part** of [the copyrighted] work, there is no substantial similarity and hence no infringement."  R. Ready Prods., Inc. v. Cantrell, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000) (emphasis added).  The elements that Plaintiffs allege were copied in the HDD Mask are not important to KCB's overall impression, let alone a "substantial" part of the work:  KCB is most known for its roots in the Mardi Gras Carnival tradition of hiding a plastic baby in a "king cake," and for racing other Mardi Gras-themed mascots.  Doc. 83 (Complaint) ¶¶ 20, 25.  KCB features a crown, a bib that states "I ♥ King Cake," a diaper, and a full-body costume.  Id. ¶ 20; Morales Decl., Ex. M.  The Mardi Gras-related elements are more important to KCB than blue eyes, an open mouth, or the other elements alleged to be similar to the HDD Mask.

assess whether "the allegedly infringing work bears a substantial similarity to the protectable aspects of the original work," based on "the perspective of a 'layman' or 'ordinary observer.'" Nola Spice, 783 F.3d at 550; see also Bridgmon v. Array Sys. Corp., 325 F.3d 572, 577 (5th Cir. 2003) ("the law of this circuit prohibits finding copyright infringement without a side-by-side comparison of the two works") (emphasis added).  This comparison "is an issue to be determined by comparison of works, not credibility," and thus may be decided as a matter of law on summary judgment.  King v. Ames, 179 F.3d 370, 376 (5th Cir. 1999); see also Section A, supra.

In analogous cases, comparing works far more similar than the works at issue here, courts have found that the high bar of "substantial" similarity was not met.  For example, in Pasillas v. McDonald's Corp., 927 F.2d 440 (9th Cir. 1991), plaintiff alleged copyright infringement of a Halloween mask depicting the man in the moon.  The court identified "four basic similarities: the crescent moon shape, the depiction of a human face in the center of the crescent, the white or off-white color, and the design enabling the mask to be worn over a person's head."  Id. at 443.  But it found that **all** of these similarities "derive from the common idea of a mask depicting the man in the moon."  Id.  Consequently, the appellate court affirmed summary judgment in favor of the defendants, finding that no reasonable jury could conclude that the **protectable** expression was substantially similar, recognizing that even minor differences in the depiction of facial features – such as the presence of ears in one work but not the other, or a differently shaped nose or grin – is enough to defeat a claim of substantial similarity.  Id. at 441.[62]

---

[62] Similarly, in Alchemy II, Inc. v. Yes! Entm't Corp., 844 F. Supp. 560 (C.D. Cal. 1994), the court rejected plaintiff's argument that two talking stuffed bears were substantially similar, even though both had clothes, a crest with the bear's name, pear-shaped heads, and similar noses, mouths, and coloring.  Id. at 568.  The court found that most of these features were "derived from the common idea of a talking, plush teddy bear," and that the pear-shaped head, though "somewhat distinctive," was not an infringing similarity because "[t]here are only a limited

4832-1819-8204v.1 0103245-000015

The Fifth Circuit similarly held that even if particular expression of an anatomical feature is protectable, that protection is thin, such that minor expressive differences defeat "substantial similarity." 783 F.3d at 551-52. In Nola Spice, these included subtle distinctions that were sufficient to warrant summary judgment: "the torso of Haydel's bead dog has three spheres, while the torso of Nola Spice's bead dog has one sphere"; "the noses of Nola Spice's bead dogs include a curled wire, either alone or atop a single sphere, while the nose of Haydel's bead dog is a single sphere"; "[u]nlike Haydel's bead dog, Nola Spice's bead dogs do not have eyes." Id.

Many other cases have held that sculptural works were not substantially similar, even where they shared common traits. See, e.g., Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987) (substantial similarity in two dinosaur toys could not be based on similar postures and body); Ideal Toy Corp. v. Kenner Prod. Div. of Gen. Mills Fun Grp., Inc., 443 F. Supp. 291, 305 (S.D.N.Y. 1977) (although plaintiff intentionally copied Star Wars themes in its toys, differences – e.g., head shape and weapons for main character; color and size of tractor treads for small robot – precluded finding infringement); Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 916–17 (2d Cir. 1980) (no infringement in "structurally similar" dolls; "all dolls attempting to express the same idea will of necessity display at least some similarity").[63]

---

number of head shapes a teddy bear could have[.]" Accordingly, the court granted the defendant's summary judgment motion. Id. at 569.

[63] Other courts in this Circuit likewise have found that visual works that bear some commonalities are not substantially similar as a matter of law. See, e.g., Straus v. DVC Worldwide, 484 F. Supp. 2d 620, 638-39 (S.D. Tex. 2007) (two photos of golfer Arnold Palmer were not substantially similar; although both showed his head and shoulders and a similar shirt, the works depicted different facial expressions, poses, lighting, angles, and coloration); Sahuc, 300 F. Supp. 2d at 466-67 (two black and white photographs of Jackson Square "framed in exactly the same way" were not substantially similar); Randolph v. Dimension Films, 630 F. Supp. 2d 741, 748 (S.D. Tex. 2009), aff'd, 381 F. App'x 449 (5th Cir. 2010) (picture of a "Mecca of Ice" in a book was not substantially similar to an image of an "Ice Castle" in a motion picture because the former showed a skyline while the latter showed a single tower); Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc., No. CIV.A. 3:06-CV-995-K, 2009 WL 691594, at

Applying these controlling principles, KCB and the HDD Mask plainly are not "substantially similar."  Even using Plaintiffs' examples of the works' "visual attributes" (Cmplt. ¶ 35), an ordinary observer can readily see that the depiction is **not** similar.[64]  Each allegation is addressed below, starting with the features that Plaintiffs assert are most distinctive about KCB.

    1.    <u>Eyes</u>:  Bertuccelli testified that "all of the creepiness" in KCB "is in the eyes," and admitted that small changes in the eyes would significantly alter the appearance.[65]  He also testified that in depicting a baby's face, "you can achieve different looks by making different artistic choices about the eyes."[66]  These admissions are significant, because a comparison of KCB's and the HDD Mask's eyes shows the artists made significantly **different** artistic choices, resulting in expression that is not similar:[67]



**KCB**           **HDD Mask**

First, KCB's pupils are "perfect circles," a choice Bertuccelli admits he made to make the eyes seem realistic; he "would never" have depicted KCB with half-moon-shaped eyes, because that "would completely throw off the look."[68]  Yet that is precisely how Gardner chose to depict the HDD Mask's eyes: to provide a cartoon-like effect, the eyes and pupils are shaped like half-

---

*5 (N.D. Tex. Mar. 16, 2009) (two ornamental light fixtures were not substantially similar where silhouette, decoration, finials, and medallions differed).

[64] <u>See also</u> notes 56, 61.

[65] SUF 40.

[66] SUF 41.

[67] This image of the eyes is from the image appearing in the Complaint.  Doc. 83 (Complaint) p. 13, ¶ 35; <u>see also id.</u> p. 15 (alleging similarity of eyes).

[68] SUF 42.

moons or tunnels.[69]  Second, KCB's eyes have excessive "white" around the iris, giving it a disturbing vacant stare; the HDD Mask's eyes have visibly less white, eliminating the "vacant" look.[70]  Third, although both works show blue eyes (as do most works depicting infants), the shade of blue differs.[71]  Fourth, KCB has no discernable eyelashes; the HDD Mask has eyelashes, and an eyeliner or mascara effect designed to suggest a feminine appearance.[72]

2.    **Coloring/finish**:  Bertuccelli testified that KCB's notably smooth and glossy finish is "one of the most important parts" of the work – an effect he achieved by using automotive polishing tools, which was intended to make KCB look like a plastic toy[73] (not unlike plastic baby toys in actual King Cakes).  The HDD Mask's finish is completely different; it has an aged finish that gives it a weathered look.  This includes scratches on the cheeks, paint scuffed off the tip of the nose, and smudges across the face, particularly above and between its



eyes.[74]  KCB's finish gives the work an angelic look; in contrast, the HDD Mask's finish makes it look like it has been in a schoolyard fight – decidedly **not** angelic.[75]

3.    **Head and face shape**: Plaintiffs allege that the two works have a similar "head

---

[69]  SUF 43.
[70]  SUF 44; Gardner Decl. ¶ 13(e).
[71]  SUF 45.
[72]  SUF 46; Gardner Decl. ¶¶ 11(f), 13(e).
[73]  SUF 47.
[74]  SUF 48.
[75]  Gardner Decl. ¶¶ 11(g), 13(i); id. Ex. A, K; Morales Decl. Exs. C-G; Complaint ¶ 35.

shape," based on the cropped image from the Internet.[76]  As a threshold matter, copyright does

not protect the depiction of a baby's head in a generally round shape, because the shape is

inherent in the nature of the work and derives from the common idea of depicting a baby (and, in

the case of the HDD Mask, from the functional need to fit the mask onto a human actor's

head).[77]  See Pasillas, 927 F.2d at 443; Alchemy II, 844 F. Supp. at 569.  But here, the shapes

also are **different**, as shown by a side-by-side comparison of KCB (first image) with the HDD

Mask as completed (second image) and as it appears in the Films (third and fourth images).[78]

   

First, the HDD Mask has a sloped and elongated forehead – a feature Bertuccelli admits is "more

grotesque" than the round shape used for KCB.[79]  Second, the chins differ:  KCB has multiple

small chins, each defined by a thin crease, as if the character is pressing his chin to his chest; the

HDD mask has a more defined double chin that is larger, and droops beneath the neckline.[80]

Third, the overall head shape is dissimilar:  KCB has a head shape reminiscent of the "Gerber

baby"; the HDD Mask is more oval or pear-shaped.[81]  Finally, KCB has hair and prominent

eyebrows; the HDD Mask is completely hairless, with no eyebrows.[82]

---

[76]  Doc. 83 (Complaint) ¶ 35 pp. 13, 14; see note 53.

[77]  SUF 49.  In contrast, Plaintiffs' walking head mascots include a torso, and are designed so
that the person wearing it sees from a hole in the work's neck.  Id.

[78]  See Complaint ¶ 30; Gardner Decl. ¶13(a) & Ex. A; Morales Decl. Exs. E, G.

[79]  SUF 50.

[80]  SUF 51.

[81]  SUF 52; See Gardner Decl. ¶13(a) .

[82]  SUF 53.  The HDD Mask's hairless appearance was a deliberate attempt to enhance its
"freaky" look.  KCB presents these elements in a more realistic fashion – which Bertuccelli

    **4.**    **Ears**:  Plaintiffs allege the HDD Mask's ears are similar to KCB's ears.  But a side-by-side comparison, as seen in the Complaint, debunks this claim.[83]




First, KCB's ears are prominent and jut out in a head-on view, which appears cute and comical; the HDD Mask's ears are not visible from the front or under a hoodie (as it usually appears in the Films), giving it a more menacing look.[84]  See Pasillas, 927 F.2d at 441 (lack of similarity based in part on absence of visible ears in one work).  Second, a side view shows KCB's ears are small in proportion to the head, adding to its comical appearance; the HDD Mask's ears are larger, more elongated, and placed lower and further back on the head.[85]

    **5.**  **Mouth**:  As seen in the side-by-side images below, [86] the lips and mouth of the two works also differ significantly:



    KCB's upper lip is almost a straight line, as it typically appears in humans.  In contrast, the HDD Mask shows an almost U-shaped upper lip that enhances its unsettling appearance; it

---

admits was a deliberate artistic decision, as shown by the fact that the hair and eyebrows are elements of both the sculpture itself, and its painted exterior.  SUF 17, 54.

[83]  Doc. 83 (Complaint) ¶ 35 p. 14.

[84]  SUF 55; Gardner Decl. ¶¶ 11(a), 13(b).

[85]  SUF 56; Gardner Decl. ¶ 13(b).

[86]  The image of the mouths here is a cropped version of the image appearing on p. 13 of Plaintiffs' Complaint.  Doc. 83 (Complaint).  See also id. at p. 15, ¶ 35.

also includes a cupid's bow, which is absent in KCB.[87]  The mouths' positioning also is different:  on the HDD Mask, the corner of the mouth extends so far up and out that it meets the pronounced lines defining the character's cheeks; KCB has more realistic proportions.[88]  The teeth also differ:  KCB has two stubby "baby teeth" symmetrical to the face's center line; the HDD Mask has a single, adult-sized tooth that is off-center, magnifying the outlandish effect.[89]

      **6.**    <u>**Nose**</u>:  KCB and the HDD Mask have differently shaped noses:[90]



KCB's nose is fatter and broader than the HDD Mask's nose.[91]  As with its head shape, eyes and mouth, KCB reflects a more realistic, "Gerber baby" depiction of a baby's nose.  In contrast, Gardner deliberately gave the HDD Mask a "plastic surgery" enhanced pointy nose, to provide a jarring effect.[92]  The HDD Mask also contains a philtrum, or cleft, under the nose that is missing from KCB.[93]

      **7.**    <u>**Cheeks**</u>:[94]  Both works depict chubby cheeks (like most works depicting babies), but the cheek definition differs.  As shown below, KCB has high dimpled cheeks with a distinct "apple"; the HDD Mask's cheeks protrude and then sag to a jowl, reminiscent of a cartoon chipmunk.[95]

---

[87]  SUF 57.
[88]  SUF 58.
[89]  SUF 59.
[90]  Doc. 83 (Complaint) ¶ 35 p. 16 (alleging similarity in noses).  The image of the noses here is a cropped version of the image appearing on p. 13 of Plaintiffs' Complaint (Doc. 83).
[91]  SUF 60.
[92]  SUF 61; <u>see</u> Gardner Decl. ¶¶ 11(d), 13(f).
[93]  SUF 62.
[94]  <u>See</u> Doc. 83 (Complaint) ¶ 35 p. 16 (alleging similarity in "cheek position").
[95]  SUF 63; <u>see</u> Gardner Decl. ¶ 13(c); SUF 37; Morales Decl., Exs. G, M.

  

**8.**   **Additional differences**:  The two works are not the same gender:  Bertuccelli admits that KCB is unambiguously male, whereas the HDD Mask was designed to be vaguely feminine, as noted above.[96]  The characters represented by the works also differ.  KCB is a baby, typically seen wearing a bib and a diaper; the HDD Mask is worn by a character who typically appears in a black hoodie and dark pants, who blends in on a college campus.[97]  KCB is a Mardi Gras-themed entertainer; the HDD Mask is worn by a jealous killer who commits repeated murders in a time loop.[98]

In sum, once this Court filters out unprotected elements that "derive from the common idea of a mask depicting" an offbeat baby (as it is required to do, <u>Pasillas</u>, 927 F.2d at 443), and compares any remaining copyrightable expression, it is clear that the HDD Mask is not at all similar to KCB, let alone "substantially" similar.  Even using Plaintiffs' own representative visual elements, the differences in the shape, composition and appearance of the works are exponentially greater than the distinctions that <u>Nola Spice</u> found defeated an infringement claim.  If an extra bead or a small wire on the nose of a bead dog is a sufficient ground to find that two works are dissimilar as a matter of law, 783 F.3d at 551-52, then the differences between the two works here – the nose, eyes, head, ears, mouth, cheeks and chin (among other things) – also

---

[96]  SUF 64; <u>see</u> Morales Decl., Exs. C, M.
[97]  SUF 65; <u>see</u> Morales Decl., Exs. A, B, M.
[98]  SUF 66.

preclude finding substantial similarity.  Id.; see also Pasillas, 927 F.2d at 441 (works with differently shaped nose or grin are not similar); id. (presence of ears in one work but not the other made it dissimilar); Nola Spice,783 F.3d at 552 (absence of eyes in one work but not the other defeated finding of similarity).  And taken as a whole, a scuffed-up, feminine mask worn by a hoodie-clad adult murderer is not substantially similar to a glossy, Mardi-Gras themed baby boy halftime entertainer, even if both have generic facial features and are in some sense both funny and frightening.  Because Plaintiffs cannot show the works at issue are substantially similar, their copyright claims fail as a matter of law.

## IV.     THE INJUNCTION CLAIM MUST BE DISMISSED BECAUSE THERE IS NO UNDERLYING INFRINGEMENT.

Plaintiffs' only other claim, for an injunction, is wholly derivative of their copyright claims,[99] and fails for the same reasons.  The Copyright Act provides that courts "may" grant injunctive relief "to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  A party seeking a permanent injunction must establish "success on the merits," among other equitable elements.  Doctor's Assocs., Inc. v. Vinnie's Smokehouse/ Meat Specialty, LLC, No. CIV.A. 10-3661, 2011 WL 1226485, at *2 (E.D. La. Mar. 29, 2011) (quoting VRC LLC v. City of Dallas, 460 F.3d 607, 611 (5th Cir. 2006)).[100]  An injunction is available only "if liability has been established."  BMI v. Tex Border Mgmt., Inc., 11 F. Supp. 3d 689, 696 (N.D. Tex. 2014). Where, as here, a plaintiff cannot establish liability for infringement, injunctive relief is not available.

---

[99]  Doc. 83 (Complaint) ¶¶ 79-84.
[100]  Plaintiffs also cannot meet the other requirements for an injunction, including proving that a failure to grant the injunction will result in irreparable injury; that the injury outweighs any damage that the injunction will cause the opposing party; and that the injunction will not disserve the public interest.  Doctor's Assocs., 2011 WL 1226485, at *2.

## V.   <u>CONCLUSION</u>

Copyright exists to promote creative expression, not to stifle it.  <u>Twentieth Century Music Corp. v. Aiken</u>, 422 U.S. 151, 156 (1975) ("the ultimate aim" of copyright law is "to stimulate artistic creativity for the general public good.").  Nothing is more likely to smother creativity than giving copyright owners an effective monopoly on abstract concepts like "bizarre mascots," or stock elements like blue eyes in depicting a baby.  The "substantial similarity" requirement assures that copyright owners cannot subject other creators to liability for using elements of expressive works that are common, generic, or otherwise unprotected by copyright.  When KCB's unprotected elements are filtered out, as the law requires, it is plain that the HDD Mask is not infringing, because any protectable expression in the works is not substantially similar.  This Court should grant summary judgment and dismiss Plaintiffs' Complaint.

DATED:  May 12, 2020                     Respectfully submitted,

                                         **DAVIS WRIGHT TREMAINE LLP**

                                         <u>  /s/Kelli L. Sager                 </u>
                                         Kelli L. Sager (*pro hac vice*)
                                            kellisager@dwt.com
                                         865 South Figueroa Street, 24th Floor
                                         Los Angeles, California  90017-2566
                                         Telephone:  (213) 633-6800/Fax:  (213) 633-6899

                                         Eric M. Stahl (*pro hac vice*)
                                            ericstahl@dwt.com
                                         920 Fifth Avenue, Suite 3300
                                         Seattle, WA  98104-1610
                                         Telephone:  (206) 757-8148/Fax:  (206) 757-7148

                                         **PHELPS DUNBAR LLP**
                                         Mary Ellen Roy, T.A. (La. Bar #14388)
                                         Dan Zimmerman (La. Bar #2202)
                                         365 Canal Street, Suite 2000
                                         New Orleans, Louisiana 70130-6534
                                         Telephone: (504) 566-1311/Telecopier: (504) 568-9130
                                         roym@phelps.com
                                         dan.zimmerman@phelps.com

                                         Attorneys for Defendants

4832-1819-8204v.1 0103245-000015