UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHAN BERTUCCELLI, and STUDIO 3, INC.,<br><br>VERSUS<br><br>UNIVERSAL CITY STUDIOS LLC, et al. | CIVIL ACTION NO. 2:19-CV-1304(T)(2)<br><br>JUDGE:<br>GREG GERARD GUIDRY<br><br>MAGISTRATE JUDGE:<br>DONNA PHILLIPS CURRAULT |

**DEFENDANTS' TRIAL BRIEF**

Pursuant to the Court's Pre-Trial Conference Minute Order (R. Doc. 310) and Scheduling Order (R. Doc. 53-1 ¶ 14(c)), Defendants Universal City Studios LLC, Universal City Studios Productions LLLP , Blumhouse Productions, LLC, Tree Falls In The Woods, L.L.C., Anthony "Tony" Robert Gardner, The Alterian Ghost Factory, Inc., Trick or Treat Studios, and Foe Paw Films, LLC (collectively, "Defendants"), respectfully submit the following trial memorandum in advance of the jury trial in this matter, which is scheduled to begin on June 14, 2021.

As directed by the Court, this memorandum focuses on "seriously contested issues of law" (R. Doc. 310 ¶ 4(f)) that Defendants will assert at trial. *See* Section II, *infra*. This memorandum also summarizes additional issues that are currently pending before the Court, or that Defendants anticipate will require a decision, before or during trial. *See* Section III, *infra*.

Most significantly, Defendants respectfully urge the Court, before the jury is seated, to address (1) the issue of "filtration" by identifying elements of the work at issue that are not protected by copyright, and thus cannot be considered as a basis for evaluating Plaintiffs' infringement claims; and (2) the admissibility of redacted or updated financial reports to comply with the Court's order excluding references to foreign revenue and expenses.

## I.  INTRODUCTION AND SUMMARY OF THE CASE

Defendants set out the factual background of this case in their Summary of Material Facts submitted with the proposed Joint Pre-Trial Order, which they incorporate by reference here. *See* R. Doc. 305 at Part VI(B).  In brief, Plaintiffs in this lawsuit allege that a mask of a cartoonish baby face (the "HDD Mask"), used as a prop in the "Happy Death Day" films ("Films"), infringes their copyright in "King Cake Baby" ("KCB"), a sculpture that Plaintiff Bertuccelli created in 2009.  At trial, Plaintiffs have the initial burden of establishing their valid ownership of the copyright in KCB and a valid registration of the work.  Defendants dispute that Plaintiffs have a valid registration in KCB, own the copyright in KCB, and/or have standing to bring this suit.  *See* Section II.B, *infra*.

Even if Plaintiffs, or either of them, shows valid ownership of the copyright in KCB, they have the additional burden of proving liability, *i.e.* proving Defendants had access to KCB, and that the HDD Mask contains expression that is substantially similar to protectable elements of KCB.  Defendants do not dispute that some individuals involved in the creation of the HDD Mask had access to online images of KCB.  But they do dispute that the HDD Mask and KCB are substantially similar in their protectable elements.[1]  Under controlling Fifth Circuit precedent, elements of an expressive work that are not protected by copyright law must be filtered out before the works at issue are compared.  Although the HDD Mask and KCB both depict a baby, basic facial anatomy and features common to caricatures of babies are not protected by copyright.  Moreover, as a matter of law, <u>this Court must filter out</u> those unprotectable elements

---

[1] Defendants also intend to rebut Plaintiffs' infringement claim on the ground that Defendants independently created the HDD Mask, which is a complete defense.  *See Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395, 399 (5th Cir. 2001) (prima facie case of copying can be rebutted with evidence of independent creation, at which point "the plaintiff has the burden of proving that the defendant in fact copied the protected material").

2

before allowing the jury to determine whether the works are substantially similar in their protected expression.  *See* Section II.A, *infra*.

Even if Plaintiffs establish liability, their sole monetary remedy in this case is for disgorgement of each Defendant's domestic profits, if any, "that are attributable to the infringement."  17 U.S.C. § 504(b).  Evaluating an alleged infringer's profits under Section 504(b) of the Copyright Act involves shifting burdens.  First, Plaintiffs must prove the Defendants' gross domestic revenues that are causally linked the alleged infringement, and in doing so, may not consider profits retained by non-parties (such as film exhibitors, streaming services, and profit participants) or overseas revenue.  *Id.*  The burden then shifts to Defendants to show deductible domestic expenses, which offset the revenue figure, as well as all elements of any profits attributable to factors other than the copyrighted work.  *Id.*; *Powell v. Penhollow*, 260 F. App'x 683, 686 (5th Cir. 2007) (under Section 504(b), the copyright owner "bears the burden of putting on evidence of Defendants' gross revenue attributable to the infringement… The burden then shifts to Defendants to produce evidence of deductible expenses.").  As discussed in Section III.A below, the evidence relevant to this issue includes financial records that cannot readily be redacted in a way that removes references to foreign revenue and expenses; accordingly, Defendants intend to present "domestic only" versions of those records at trial.

## II.   CONTESTED ISSUES OF LAW[2]

### A.   Which elements of KCB, if any, are protected by copyright, and which elements are not protectable.

Under Fifth Circuit precedent, the first step in evaluating "substantial similarity" is to "distinguish between protectable and non-protectable elements of the copyrighted work."  *Nola Spice Designs, L.L.C. v. Haydel Enters, Inc.*, 783 F.3d 527, 550 (5th Cir. 2015).  After the

---

[2] Defendants preserved each of these contested issues of law in the Pre-Trial Order.  *See* R. Doc. 305 § IX, points 2-7, 9-10.

unprotected elements are filtered out – that is, removed from consideration – any remaining expression is evaluated in a "side-by-side comparison" of the works to assess whether "the allegedly infringing work bears a substantial similarity to the protectable aspects of the original work." *Id.*; *see also Engineering Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1343 (5th Cir. 1994).

Plaintiffs will attempt to meet their burden of proving "substantial similarity" by relying on elements of KCB that are not protectable – including aspect of the work that lack originality, are generic, are scenes á faire, constitute ideas, depict common anatomical features or other features common to depictions of babies, or are inherent to the underlying idea embodied in the work. For instance, Plaintiffs rely on the idea that both works at issue depict creepy babies, and contain facial features (*e.g.*, blue eyes, chubby cheeks) commonly seen in depictions of babies, to argue that the two works look similar "overall." These elements are not protected by copyright law, and must be disregarded. *See Nola Spice*, 783 F.3d at 550-51; *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2d Cir. 2004) (an "upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll face. That idea belongs not to Mattel but to the public domain"). This legal principle is underscored by the fact that many examples of cartoonish baby characters that predate KCB contain the very elements that Plaintiffs allege were copied in the HDD Mask; Plaintiffs cannot own rights to these unprotectable characteristics.

Additionally, the copyright in KCB extends only to the work as depicted in the deposit copy registered with the U.S. Copyright Office. *See* Section C. Plaintiffs may not establish infringement based on elements of KCB – such as its status as a "mascot" – that do not appear in the deposit copy. 17 U.S.C. §§ 407(a), 408(b), 101 (definition of "best edition"); 37 C.F.R. §§ 202.20(c)(2)(xi)(A)(1), 202.21(b); Compendium of U.S. Copyright Office Practices (3d Ed.) §

4

1506 (defining deposit requirements for sculptures).  The Court must filter out these elements from the substantial similarity analysis as well.

Under the above authority, any references at trial that compare KCB and the HDD Mask without filtering out unprotectable elements would be improper as a matter of law.  As detailed in Defendants' pending motion in limine on this point (R. Doc. 313, Motions 1, 2), any side-by-side comparison of the works at trial that does not filter out unprotectable elements of the works is irrelevant to the substantial similarity question facing the jury.

Accordingly, Defendants request that this Court prohibit any exhibit, demonstrative, argument or testimony that compares the HDD Mask and KCB as a whole in a side-by-side manner, unless those images are labeled to illustrate which elements are not protectable.  For example, if Plaintiffs present images pointing out that both works contain standard facial anatomy, such as the nose, eyes, mouth, and ears, the exhibit should be labeled in a way that makes clear (and the jury should be admonished) that the mere presence of these anatomical elements is not protectable, and that their task is to compare only the works' protectable expression.  In addition, while Defendants have proposed a jury instruction and special interrogatory addressing the filtration analysis, Defendants maintain that the filtration analysis must be undertaken by the Court.

### B. Whether Bertuccelli and/or Studio 3, Inc., owns the copyright in KCB, has a valid registration, and has standing to sue for infringement.

Defendants dispute that Plaintiffs (or either of them) own a valid copyright in KCB, have properly registered KCB, and have standing to sue for infringement.  A valid copyright registration is a prerequisite for filing an infringement suit.  *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019); 17 U.S.C. § 411(a) ("no civil action for

infringement … shall be instituted until … registration of the copyright claim has been made in accordance with this title.").

The copyright registration in KCB names Plaintiff Bertuccelli as the sole author and copyright claimant in KCB. But Plaintiff Studio 3 is not named in the copyright registration, and no writing grants Studio 3 any rights. For this reason, Studio 3 lacks standing to pursue any claims in this action, and it should be dismissed. *Id.*; *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1167-69 (9th Cir. 2013).

Defendants will establish at trial that Bertuccelli is not the rightful owner of the copyright in KCB. Instead, the evidence will show that he created KCB as a "work made for hire" on behalf of Studio 3. An employee in such circumstances does not own the copyright. *See* 17 U.S.C. § 101, § 201(b).

Additionally, the KCB copyright registration is invalid because Plaintiffs failed to disclose accurate information about the work's ownership. A registration is invalid if it contains an inaccuracy that was included "with knowledge that it was inaccurate," and the inaccuracy, if known, would have caused the Copyright Office to refuse registration. 17 U.S.C. § 411(b)(1). Fraudulent intent is not required, so long as the registrant has knowledge of the facts that give rise to the inaccuracy. *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016). Plaintiffs' misidentification of KCB's ownership invalidates the registration.

### C.     Whether any Defendant infringed Plaintiffs' copyright in KCB.

Plaintiffs must establish liability at trial as to each Defendant. As described above, this requires that the Court first filter out unprotectable elements, and then a "side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Bridgmon v. Array Systems Corp.*, 325

6

F.3d 572, 576 (5th Cir. 2003); *Creations Unlimited v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997).

This analysis must also consider whether each separate Defendant may be held liable for infringement. Plaintiffs' sole remedy at trial is a request for disgorgement of Defendants' profits, if any, attributable to each Defendant's infringement. 17 U.S.C. § 504(b). But under that provision, "each defendant is only liable to the copyright plaintiff to the extent of its own profits derived from the infringing activity; . . . 'one defendant is not liable for the profit made by another.'" *Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 517 (4th Cir. 2002) (quoting *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1981)); *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. CIV.A. 07-572) 2010 WL 5068938, at *2 (W.D. La., Dec. 7, 2010) (under Section 504(b), one defendant is not liable "for the illegal profits of his fellow infringers."), citing *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 472 (2d Cir.1985)). "[E]ven related defendants are not jointly liable for the total profits realized by all of the defendants, but are rather individually liable for their own respective profits derived from the infringement." 3 Nimmer on Copyright § 12.04 (2019).

This Court has previously recognized that Plaintiffs must establish liability as to each individual Defendant. First, the Court ruled that Plaintiffs failed to properly plead a separate cause of action for vicarious liability. R. Doc. 276 at 3. The Court also noted that "Plaintiffs attest that they have no intention of ascribing profit figures collectively or conflating revenue or expenses of one defendant with that of another," and denied Defendants' motion in limine to exclude total revenues or profits of the Films (as opposed to those of individual Defendants) on the basis of that representation from Plaintiffs. R. Doc. 276 at 4. This Court must hold Plaintiffs

7

to that representation at trial, and not permit Plaintiffs to ascribe the conduct or the profits of one Defendant to a different Defendant.

    **D.**  **Whether unauthenticated social media posts are admissible into evidence.**

From the outset of this lawsuit, Plaintiffs have emphasized a small number of social media posts, tweets, and Internet publications that purport to compare KCB and the HDD Mask. *See, e.g.*, R. Doc. 83 (Second Amended Complaint) ¶¶ 37-40. Plaintiffs seek to offer these posts, and similar unauthenticated online material, into evidence at trial. *See, e.g.*, Exhibits 200-202, 212. These materials are inadmissible for multiple reasons and should be excluded.

First, these Internet posts do not even purport to engage in "filtration," nor the type of detailed analysis of purported similarities or differences that are required under the law. Accordingly, they have no probative value and are irrelevant. *See* F.R.E. 401. The Fifth Circuit expressly held in *Nola Spice* that a copyright owner cannot create a genuine factual dispute over "substantial similarity" by relying on public statements about the supposed resemblance or "confusion" between the two works at issue, particularly where those statements fail to distinguish between protected and unprotected expression. In that case, the copyright owner of a Mardi Gras "bead dog" design offered as evidence statements that "its customers were confused about the relationship between Nola Spice's bead dogs and Haydel's mascot," including a sworn statement that the owner "personally heard several customers of Haydel's Bakery asking whether Nola Spice Designs sells Haydel's" design. 783 F.3d at 552. The court held that these statements did not create any triable issue of fact, because the statements were based on a comparison of the two designs "in their entirety, and would therefore have been based largely on unprotectable elements." *Id.* at 553. The tweets and online material Plaintiffs intend to offer as evidence of public "confusion" between KCB and the HDD Mask are inadmissible for the same reasons.

8

Second, the materials are likely to confuse the jury about the proper standard for evaluating substantial similarity.  *See Ford v. Sharp*, 758 F.2d 1018, 1023 (5th Cir. 1985).  They could easily mislead the jury into thinking that third-party opinions strewn about on social media may supplant the jurors' own impressions of the works, which is not what the law provides.  The law requires that, after this Court first filters out unprotectable elements, the trier of fact must decide whether there is substantial similarity between the works; unsubstantiated and hearsay opinions by third parties are not part of this analysis.  4 Nimmer on Copyright § 13.03[E][1][a] (2000) (under the ordinary observer or "audience test," the factfinder must determine piracy "without any aid or suggestion or critical analysis by others," and then decide if there is substantial similarity of protectable expression) (citation omitted).

Finally, these materials lack proper foundation and are hearsay.  *See* F.R.E. 801, 901.  The Court should prohibit any argument, evidence or reference to social media posts or Internet publications that purport to compare KCB with the HDD Mask, as they are inadmissible hearsay and the risk of unfair prejudice, or of misleading and confusing the jury, are substantially outweighed by any probative value (of which there is none).  F.R.E. 403.

Defendants previously moved to exclude social media posts, as part of a broader motion regarding evidence of alleged similarity.  *See* R. Doc. 150, at 8-12.  This Court declined to issue a "blanket order" excluding unfiltered side-by-side comparisons of the works "as a whole."  *See* R. Doc. 256.  But the Court reserved the objections for trial, *id.* at 3; and its Order did not address the admissibility of social media posts.  Accordingly, Defendants raised the issue in a more specific Motion in Limine filed on May 26, 2021.  R. Doc. 313, Motion 3.  That motion remains pending.

Concurrent with this trial brief, Defendants have lodged objections to these exhibits. If this Court does not exclude the exhibits, Defendants respectfully request that the Court require Plaintiffs to establish each exhibit's legal relevance and lay a proper foundation for each exhibit's authenticity and admissibility.

      **E.**      **Whether Plaintiffs' experts meet *Daubert* standards.**

Pending before the Court are several motions in limine seeking to exclude the testimony of Plaintiffs' proposed expert witnesses, James T. Berger and Gary D. Rhodes. *See* R. Doc. 313, Motions 4, 6, 7. Defendants intend at trial to assert their *Daubert* challenges to both witnesses. The grounds are summarized below.[3]

      **1.**      **The *Daubert* standard**

For a witness to testify as an expert at trial, he or she must be qualified to do so "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 593-95 (1993), and its progeny, a "district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). When expert testimony is challenged under *Daubert*, the burden rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

To ensure that any proposed expert testimony is both reliable and relevant under Rule 702, *Daubert* imposes a "gatekeeping" role on trial judges that, in turn, triggers a two-part

---

[3] This Court previously denied Defendants' motion to exclude the testimony of Mr. Berger. R. Doc. 253. The Court granted in part Defendants' motion to exclude the testimony of Dr. Rhodes, excluding any testimony on substantial similarity but permitting Dr. Rhodes's testimony on "the function masks play in the financial success of horror films." R. Doc. 273 at 4. Defendants contend both experts fail to satisfy *Daubert*.

analysis. *See In re Vioxx Products Liability Litigation*, 414 F. Supp. 2d 574, 579 (E.D. La. 2006); *Marshall v. Supreme Offshore Services., Inc.*, No. 10-3198, 2011 WL 6258487 at *1 (E.D. La. Dec. 15, 2011) (Vance, J.). First, the court must determine whether the testimony is relevant, *i.e.* that it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002). Second, the court must determine whether the proffered testimony is reliable – that is, whether the "reasoning or methodology underlying the testimony is scientifically valid." *Curtis*, 174 F.3d at 668. The testimony must be grounded "in the methods and procedures of science and …. be more than unsupported speculation or subjective belief." *Id.* (citing *Daubert*, 509 U.S. at 590). When determining reliability, a court may consider: "(1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community." *JRL Enterprises, Inc. v. Procorp Assoc's, Inc.*, No. 01-2893, 2003 WL 21284020 at *1 (E.D. La. June 3, 2003) (Fallon, J.).

### 2. James Berger

Mr. Berger's testimony fails the *Daubert* standard because it is both irrelevant and unreliable. *See* R. Doc. 101-1.

First, his testimony is irrelevant because it is inconsistent as a matter of law with the Fifth Circuit's tests for determining copyright infringement. Most egregiously, it fails to filter out unprotectable elements of the works. *See* Section A, *supra*. The Fifth Circuit has rejected the notion that "substantial similarity" may be shown by alleged "confusion" between two works when compared as a whole.

4838-8361-0860v.2 0103245-000015

Second, any expert testimony is irrelevant to the substantial similarity analysis, during which a layperson – *i.e*., the jury – must compare the works' protected expression. By adopting the "ordinary observer" standard, the Fifth Circuit effectively has ruled out the use of expert testimony to make this determination, which requires a "side-by-side comparison … to determine whether a layman would view the two works as 'substantially similar.'" *Bridgmon*, 325 F.3d at 576. Because the appropriate legal standard is how a *layperson* would view the works' protected expression, expert testimony would not "help the trier of fact understand the evidence or . . . determine a fact in issue." F.R.E. 702; *Batiste v. Najm*, 28 F.Supp.3d 595, 605 (E.D. La. 2014) (areas such as "film or music" should be "judged strictly from the perspective of the ordinary lay listener or observer."). Berger's asserted "expert" conclusion about how the works at issue would be viewed by "laypersons" expresses a *non-sequitur* that would not assist the trier of fact.

Third, Mr. Berger's testimony is unreliable because there is no scientific validity to the reasoning and methodology underlying Mr. Berger's report. Summarizing tweets found in an online search requires no expertise, and does not utilize any professional skills.

Finally, his testimony is unreliable because he lacks the necessary experience to qualify to give expert opinion testimony in this case. His experience is exclusively in trademark infringement and marketing. Critically, trademark infringement analysis employs an entirely different standard inapplicable here, which considers "consumer confusion"; Mr. Berger intends to conflate this inapposite trademark standard with the distinct "substantial similarity" standard. "Substantial similarity," however, cannot be shown through consumer confusion between the works in their entirety. R. Doc. 101-1 at 20-23.

12

### 3. Gary Rhodes

Dr. Rhodes's testimony also should be excluded, for reasons set out in their prior motions to exclude.  R. Doc. 148; R. Doc. 313-1 Motion 6, 7.  This Court agreed with Defendants as to some of these reasons, granting in part their motion to exclude Dr. Rhodes' testimony insofar as he sought to opine on substantial similarity, but permitting his testimony on the function of masks in films.

Dr. Rhodes is entirely unqualified to testify as an expert on that or any other topic in this matter.  He lacks any expertise on the subjects on which he purports to opine, such as comparing sculptures or masks, or addressing issues related to film financing, accounting, or the profitability of feature films.  Instead, his experience is in horror film history, which is not relevant to any issue of liability or damages in this case.

In addition, his damages opinion is unreliable because it is unsupported by valid methodology.  He conducts no analysis, and does not conduct any survey, economic review, or any sort of objective analysis of any alleged factors in the Films' success.  Instead, his testimony is simply his personal subjective belief, which does not suffice under the *Daubert* standard.

### F. Whether disgorgement of profits is an equitable remedy that must be decided by the court.

Defendants previously moved to strike Plaintiffs' jury demand on the ground that Plaintiffs' only monetary remedy – disgorgement of Defendants' profits – is an equitable claim for relief that does not entitle Plaintiffs to any constitutional or statutory right to a jury trial.  The Court denied the motion to strike, in an order entered on June 2, 2021.  R. Doc. 323.  Defendants understand the Court has decided the issue, and raise it here to preserve the argument that disgorgement of profits, under the circumstances of this case, is an equitable remedy.  *See* 17 U.S.C. § 504(b); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685 (2014); *see also*

13

*Fair Isaac Corporation v. Federal Insurance Company*, 408 F. Supp.3d 1019 (D. Minn. 2019) (*Petrella* mandates a bench trial on section 504(b) disgorgement); *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, 2020 WL 598284, at *4 (S.D. Tex. Feb. 7, 2020).  In addition, as detailed below, accounting for each Defendants' domestic profits poses evidentiary issues and complexities that illustrate why disgorgement is an equitable remedy that is more suited to (and historically has been tried in) a bench trial.

### G.   Whether Plaintiffs are entitled to injunctive relief.

Plaintiffs have pled claims for injunctive relief.  R. Doc. 83 pp. 36-37, 41-42.  The parties agree that any injunction is an equitable remedy that must be decided by this Court, not the jury. *See* R. Doc. 298 at 1 (Plaintiffs' opposition to Defendants' motion to strike, noting "Plaintiffs' claim for injunctive relief would always be entered by the Court based on the jury's verdict").

Defendants anticipate that Plaintiffs' entitlement to any injunction would be addressed in briefing and arguments following a jury verdict, if and only if the jury finds for Plaintiffs on liability.  Defendants intend to contest injunctive relief even if liability for infringement is found. "[A] permanent injunction does not automatically issue upon a finding of copyright infringement…. Rather, under 'well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief,' and a court's decision to grant or deny such relief is within the exercise of its discretion."  *Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1323 (11th Cir. 2008), quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006).

Defendants contend that Plaintiffs will be unable to meet their burden of satisfying the four equitable factors, which are (1) irreparable injury; (2) monetary damages or other remedies inadequate to compensate for any alleged injury; (3) that the balance of hardships favors an injunction; and (4) that the "public interest would not be disserved by a permanent injunction."

14

*Id.*; *See Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 533 (5th Cir. 2016). Indeed, *any* disgorgement of Defendants' profits would be more than adequate to compensate Plaintiffs, who have admitted they have suffered no actual damages or injury. Moreover, Plaintiffs would suffer no hardship from continued distribution of the Films at issue; indeed, *Happy Death Day* had already been released before Plaintiffs brought their action. *See Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (denying motion for injunction and finding that "[a] matter is moot 'when it is impossible for a court to grant any effectual relief whatever to the prevailing party'."). Finally, Plaintiffs' requested injunction against further distribution would not be in the public interest; to the contrary, it would be an impermissible restraint on free speech. *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 672 (5th Cir. 2000) (vacating and remanding injunctive relief where district court did not adequately consider First Amendment implications.)

Defendants reserve all further arguments against any injunctive relief and intend to address the matter further, if necessary, following the jury's decision.

### III.   OTHER ANTICIPATED ISSUES REQUIRING DECISION BEFORE OR DURING TRIAL

For the convenience of the Court, Defendants offer the following list of issues that remain outstanding for decision before trial, and issues they anticipate will arise during trial.

#### A.   Pending Motions.

Defendants respectfully request that the Court rule on their pending evidentiary motions, as they raise issues that could significantly affect the course of trial and the scope of evidence. The pending motions raise issues that should be addressed before trial to ensure the jury does not hear inadmissible or unfairly prejudicial evidence. *See Luce v. U.S.*, 469 U.S. 38, 40 n.2 (1984)

15

(motions in limine are designed to "exclude anticipated prejudicial evidence before the evidence is actually offered").

Most significantly, as detailed above, Defendants request that this Court prohibit any exhibit, demonstrative, argument or testimony that compares the HDD Mask and KCB as a whole, without filtering out standard anatomical features, elements not contained in the deposit copy of KCB, and other material that is not protected by copyright.  *See* Section II.A, *supra*.

Second, Defendants respectfully ask the Court to address their motion in limine regarding the parties' efforts to comply functionally with the Court's order excluding references at trial to foreign revenue and expenses.  R. Doc. 313, Motion 13; R. Doc. 313-1 at 11-12.  As explained in the motion, this Court has ruled that foreign revenues and expenses are beyond the reach of the Copyright Act, which does not apply extraterritorially.  *See* R. Doc. 276 (granting in part Defendants' motion in limine); R. Doc. 299 (denying reconsideration of same).  The order raises practical issues, as many of Defendants' financial records cannot readily be redacted in a way that removes information about foreign revenue and expenses.  Defendants have provided as trial exhibits versions of previously-produced financial records that have filtered all reference to foreign revenue and expense information, and have proposed to use these records at trial.  *See, e.g.*, Exhibits 568, 570-73, 575-76 (revised or redacted financial documents).  Plaintiffs have objected.  The issue needs to be resolved before trial to assure that the parties can put on evidence of revenues and expenses in a manner that the jury can understand, and that complies with the Court's order.

Also pending is Defendants' motion to exclude untimely opinion testimony by Plaintiffs' proposed expert Elaine Douglas, on the ground that her "supplemental" report provided on

16

May 14, 2021, addresses new theories and methodologies not disclosed during discovery or within the period required for expert disclosure. R. Doc. 311.

Finally, Defendants' May 26, 2021 motion in limine seeks rulings on additional evidentiary issues. *See* R. Doc. 313. Defendants in that motion asked that the Court enter pre-trial orders prohibiting evidence, argument, testimony or inferences:

- That copyright infringement can be based upon the Hornets' and Pelicans' use of the KCB sculpture as a "mascot" appearing in a diaper, bib, and crown.

- Relating to potential future revenues or profits from any alleged infringement that Defendants have not received.

- Regarding (a) actual damages to Plaintiff, and (b) the purported historical under-compensation or lack of credit to prop makers in the film industry.

- Related to Defendants' insurance policies.

- Regarding prior lawsuits or other claims of copyright infringement.

- That Plaintiffs' copyright infringement claims may be based, in part or in whole, on the fact that the *Happy Death Day* movies were filmed in Louisiana.

- That the alleged copyright infringement is part of a pattern or practice by the Defendants (or film-makers generally) to exploit local artists, artwork, or locales.

- Referring to Defendants or their counsel as outsiders, interlopers, foreigners, or other similar derogatory terms. R. Doc. 313.

*Id.* Defendants respectfully ask the Court to rule on these motions before trial.

### B. Additional issues.

As discussed at the pre-trial conference, both parties (but primarily Defendants) intend to call out-of-town witnesses. *See* R. Doc. 305 at 27-33 (witness lists). The parties have agreed to work cooperatively to accommodate these witnesses' travel schedules and availability, including, if necessary, by presenting some testimony "out of order." Additionally, both parties intend to call out-of-town witnesses for whom travel will be challenging or impossible, particularly in

17

light of the constraints raised by the COVID-19 pandemic. The parties are agreeable to taking testimony remotely via videoconference, and understand this to be acceptable to the Court.

Defendants this week alerted the Court and Plaintiffs' counsel to an emergent situation involving a key defense witness. Defendants do not have further information at this time, but as previously noted, the situation may require Defendants to request a trial continuance.

As discussed at the pre-trial conference, the parties intend to show both Films at issue to the jury. *See* Exhibits 158-59. The parties have yet to determine when this will occur.

DATED: June 4, 2021

RESPECTFULLY SUBMITTED:

**DAVIS WRIGHT TREMAINE LLP**

  */s/Eric M. Stahl*
Kelli L. Sager (*pro hac vice*)
Eric M. Stahl (*pro hac vice*)
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 633-6800
kellisager@dwt.com
ericstahl@dwt.com

Everett Jack (*pro hac vice*)
Davis Wright Tremaine LLP
1300 SW 5th Avenue, Suite 2400
Portland, OR 97201
Telephone: (503) 241-2300
everettjack@dwt.com

**PHELPS DUNBAR LLP**

David Patron (La. Bar #22566)
David.patron@phelps.com
Mary Ellen Roy, T.A. (La. Bar #14388)
   roym@phelps.com
Dan Zimmerman (La. Bar #2202)
dan.zimmerman@phelps.com

ATTORNEYS FOR DEFENDANTS UNIVERSAL CITY STUDIOS LLC, UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, BLUMHOUSE PRODUCTIONS, LLC, TREE FALLS IN THE

              WOODS, L.L.C., ANTHONY "TONY" ROBERT GARDNER, THE ALTERIAN GHOST FACTORY, INC., TRICK OR TREAT STUDIOS AND FOE PAW FILMS, LLC

4838-8361-0860v.2 0103245-000015